## The Cincinnati Times Star Company v. Clay's Admr.

(Decided June 23, 1922.)

### Appeal from Laurel Circuit Court.

1. Infants—Action for Death—Child Labor Law.—The personal representative may recover for the death of a child employed in violation of section 331a-1 Ky. Statutes, known as the Child Labor Law, if such employment is the proximate cause of the death.

2. Infants—Child Labor Law.—The employment of a boy under 14 years to deliver and sell newspapers on and about the streets of a city of the sixth class or elsewhere in the state as a street occupation in the customary way, except in cities of the first, second and third classes, is not prohibited by subsections 1, 9 and 15, or otherwise, by section 331a, Ky. Stats., except during school hours.

3. Infants—Action for Death.—The recovery in such cases is for the benefit of the relatives in the order named in section 6, Ky. Statutes, and not the estate of the deceased child, and the father being the beneficiary for whose benefit this action was prosecuted, there could be no recovery if he knew of and suffered the employment.

4.   Infants—Evidence.—It was error to permit the father to relate a
     conversation between himself and the son relative to the. em-
     ployment.

HAZELWOOD & JOHNSON and LOUIS V. SAWYER for appel-
lant.

H. J. JOHNSON and H. C. CLAY for. appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

The defendant is appealing from a judgment against
it for $3,000.00 based upon its employment of a boy ten
years of age as a newsboy in London, Ky., which it is
claimed was unlawful and the cause of his death from
pneumonia.

The action as prosecuted is authorized by section 241
of the Constitution and section 6 of the statutes, and re-
covery waranted if the employment was unlawful and the
proximate cause of the death.   L. H. & St. L. Ry. Co. v.
Lyons, 155 Ky. 396, 159 S. W. 971; Stewart Dry Goods
Co. v. Miller, 168 Ky. 670, 182 S. W. 866; Ky. Utilities
Co. v. McCarty's Admr., 169 Ky. 38 and 170 Ky. 543, 183
S. W. 237; Sanitary Laundry Co. v. Adams, 183 Ky 39,
208 S. W. 6.

Numerous errors are assigned for reversal, but being
convinced that the employment was neither unlawful nor
proven to have been the proximate cause of the death,
we need not consider the other questions raised.

Chapter 72 of the Acts of 1914, as amended, known as
the Child Labor. Law and being section 331a, subsections
1 to 17 of Carroll's 1922 edition of the statutes, prohibits
the employment of children under 14 years of. age in cer-
tain employments, and regulates their employment and
that of older children in all businesses.

The only provisions of the act applicable here under
the contention of either party are found in subsections 1,
9 and 15, and read as follows:

"331a-1.   No child under fourteen years of age shall
be employed, permitted or suffered to work in or in con-
nection with any factory, mill, workshop, mercantile es-
tablishment, store, office, printing establishment, bakery,
laundry, motion picture establishment, or in the distri-
bution or transmission of merchandise or messages.   It
shall be unlawful for any person, firm or corporation to
employ any child under fourteen years of age in any bus-
iness or service whatever during any part of the term

during which the public schools of the district in which the child resides are in session.

"331a-9. 'No child under the age of sixteen years shall be employed, permitted or suffered' to perform 23 specified kinds of labor, (24) nor to work in any other occupation dangerous to the life or limb or injurious to the health or morals of such child, and as to these matters the decision of the county physician or city health officer, as the case may be, shall be final.

"331a-15. No boy under fourteen years of age, nor girl under eighteen years of age shall be employed, permitted or suffered to work at any time in any city of the first, second or third class in or in connection with the street occupations of peddling, bootblacking, the distribution or sale of newspapers, magazines, periodicals or circulars, nor in any other occupation pursued in any street or public place."

Counsel for plaintiff insist that the employment of deceased was contrary to the provisions of the first two of these sections, while counsel for defendant, denying this, insist the employment is impliedly permitted by the last, the place of employment being a city of the sixth class.

What the legislature meant by these several provisions must be ascertained from a consideration of each in connection with the others rather than from a consideration of each singly and by itself, since only by so doing may they be harmonized.

The concluding clause of the first sentence quoted from 331a-1, if considered alone or in connection with other provisions of that sentence merely, might fairly be construed to prohibit the employment of a boy under fourteen years of age as a newsboy at any time or place, as he doubtless would be engaged in a distribution of merchandise, since merchandise as defined by this court in another connection is perhaps comprehensive enough to "embrace every tangible species of personal property." Ellis & Conner v. Commonwealth, 186 Ky. 494, 217 S. W. 368.

But that the legislature did not so intend by the use of the word merchandise here, is, we think, made clear by its separate treatment of the sale of newspapers by boys under fourteen years of age in another section of same act, viz.: 331a-15, *supra*.

The second sentence quoted from 331a-1, however, we are sure must be considered as a qualification of both

331a-9 and 331a-15, *supra,* since it makes unlawful the employment of any child under fourteen years of age in any business or service whatever "during any part of the term during which the public schools of the district in which the child resides are in session."

The meaning of this part of 331a-1 just quoted is the subject of a sharp conflict of opinion and much discussion by counsel in their briefs. It is the contention for plaintiff, and this seemingly was the view of the trial court, that the employment of deceased was unlawful by reason of this provision because the contract for his services was entered into during a term of the public school he attended regardless of whether his services were to be performed while school was actually in session.

In our judgment neither the language employed nor the evident legislative purpose sustains such a construction. The legislature was not forbidding contracts by infants under fourteen years of age which were necessarily unenforceable, but it was endeavoring to prevent their working at any business or service during school hours. The legislature did not of course mean that a boy under fourteen years of age could not be emplyed to drive up the cows or cut kindling wood for a neighbor before or after school hours during term time, yet this is what they said and meant according to plaintiff's contention. They were careful to say, and they must have meant, that such children must not be employed in any service during *any part* of the term *during which school was in session.*

The public school this boy attended was not in session at any time he was engaged in delivering papers for defendant, and it is not even shown that it was in session when the contract for his services was executed, if that were material, which is not true. The services were performed during the term of school which began in September and ended in May or June, but not during any part of the term while school was in session. This is conclusively established by the proof which shows without contradiction that the services were performed by deceased between 6 and 7:30 a. m., that his school began at 8:30 a. m., and that he was neither absent from nor tardy at school any day while he was delivering papers for defendant.

The next contention for plaintiff is, that the employment was in an occupation dangerous to life and limb of deceased, as denounced by 331a-9, *supra.* To sustain

this contention it was pleaded and proven that London, a municipality of the sixth class, has a population of about 2,000; that the L. & N. R. Co. maintains and operates a double track railroad through it, and that many automobiles habitually traverse its streets.

We have held in several of the cases cited above that whether or not a particular employment was dangerous is a question of fact, and, upon conflicting evidence, for the jury. This is unquestionably the correct rule, but it is not applicable of course where the legislature had either forbidden or permitted the involved employment and thereby determined its status under the act. For instance, if 331a-1 positively forbade, as plaintiff contends, the employment of a boy under fourteen years of age to deliver papers, it is obvious such employment was not to be treated as permissible or unlawful under 331a-9, depending upon whether or not it was dangerous as defined in this latter section.

Likewise, if section 331a-15 permits the employment, as defendant contends, it is obvious the question of whether or not it was dangerous under 331a-9, can not arise. Hence this question is pertinent here only if section 331a-15 does not permit the employment, and we shall now direct our attention to that section.

The inquiry with reference to this section, which it will be noticed does not expressly permit the employment of a boy under fourteen years of age to sell newspapers, is whether by forbidding it in the three larger of the six classes into which the cities of the Commonwealth are divided by law, the legislature impliedly permitted such employment in the country and in towns and cities of the other three classes.

This would be true unquestionably, it seems, if this section were the only prohibition, since previously such employment was not unlawful anywhere in the state. This, then, is also true unless the legislature has made it unlawful by some other provision of the act. As we have already suggested, the legislature, by devoting this entire section exclusively to selling papers and other street occupations and not referring thereto specifically in other sections of the act, has manifested a purpose to deal specifically with this subject in this section rather than to include it in the general prohibitions found elsewhere in the act, except that the prohibition against the employment of any child under fourteen years of age in "any

business or service" during school hours necessarily applies to this subsection and all others.

It results then necessarily, we think, that the act as a whole makes obvious a legislative purpose to prohibit the employment at any time of boys under fourteen years of age to sell and deliver newspapers in the ordinary way as a street occupation only in cities of the first, second and third classes, and by not forbidding it in such places only by necessary implication permits their employment to do such work elsewhere in the state, except during school hours. And from this it also follows that the ordinary dangers of using the streets of a city of the fourth, fifth or sixth class in selling papers, which dangers are not materially different from those encountered by children in going to and from school or doing simple errands in such cities, are not of the kind contemplated by clause (24) of section 331a-9.

As deceased was not at work during school hours under his employment by defendant to deliver and sell papers in London, and the papers were thrown off of a night train at the depot and there later gotten by deceased and sold on the streets or delivered about town by throwing them on porches and in the doors of homes and business houses, we are confident the employment was not forbidden by either the terms or purpose of the act; and the trial court erred in holding it unlawful.

Not only so, but the evidence would support the inference that deceased contracted his illness when not engaged at his work in delivering papers just as consistently as that he contracted it while at work; and for this reason also the court erred in overruling defendant's motion for a directed verdict.

And even if upon another trial the evidence authorizes a submission of the case to the jury, the question of the father's knowledge of the employment and suffering it to continue should be submitted, if request therefor is again made, and the evidence on the subject is the same, since despite his denial there is much if not convincing circumstantial evidence that he must have known of it almost from the start, as well as some evidence indicating that the fatal illness was contracted after the father admits he knew about the employment.

The recovery is solely for the benefit of the father and not for the estate of the decedent, though the action under the statute authorizing it is prosecuted in the name of the personal representative of the deceased, and

a recovery for his benefit is not allowed if he knew of and suffered the employment. Ky. Utilities Co. v. McCarty's Admr, *supra.*

Upon authority of this same case and under section 606 of the Code, no part of the conversation between the father and son, which the former was permitted to relate over defendant's objection, should have been admitted for any purpose.

Judgment reversed and the cause remanded for proceedings consistent with this opinion.