MYRTLE MAY HORTON V. HOUSTON & TEXAS CENTRAL RAILWAY COMPANY ET AL.

Decided June 7, 1907.

**1.—Railroads—Care to Avoid Collision—Presumption of.**

The presumption that a person about to cross a railroad track will either promptly cross ahead of an approaching engine or wait until the engine has passed, can not be indulged in the presence of conduct on the part of such person, indicating a different purpose, nor when the conduct of those in charge of the engine is calculated to induce such person to attempt to cross.

**2.—Same—Apparent Danger—Duty to Avoid Producing.**

Those in charge of locomotives are bound to exercise care not only to avoid actual collision but to refrain from creating such an appearance of imminent danger as would be reasonably calculated to frighten persons of average temperament and to cause them to adopt dangerous methods to save themselves from the seeming danger.

**3.—Same—Same—Charge.**

In a suit by a passenger upon a street car for personal injuries received in an effort to avoid apparent danger from collision with a locomotive, charge considered, and held to be upon the weight of evidence.

**4.—Interested Witness—Cross Examination—Latitude.**

In a suit for personal injuries it was proper to permit counsel for defendant on cross examination to ask a doctor who testified for plaintiff if he had not testified in many personal injury cases brought by the same attorneys who represented the plaintiff in this case, and whether or not his fees were dependant upon a recovery.

Appeal from the District Court of Harris County. Tried below before Hon. W. P. Hamblen.

*Lovejoy & Parker,* for appellant.—The special charge was clearly erroneous, in that it was upon the weight and effect to be given the testimony. Texas & P. Ry. Co. v. Murphy, 46 Texas, 366; Lee v. International & G. N. R. Co., 89 Texas, 588.

*Lane, Jackson, Kelley & Wolters,* for appellee, H. & T. C. Ry. Co.—On cross-examination of one who, as an expert, has given material testimony, it is competent for opposing counsel to elicit all such admissions from the witness as may tend to disclose his self-interest, motives, prejudice, skill or credibility, insofar as the same may have a bearing on the issues in the case, or the weight of his testimony. Hargis v. St. Louis, A. & T. Co., 75 Texas, 23; Texas & Pac. Ry. Co. v. Roberts, 14 Texas Civ. App., 534; 1 Labat on Master and Servant, sec. 354.

*C. R. Wharton,* for appellee, Houston Electric Company.—It was proper for the court to permit counsel for defendants to interrogate Dr. Boyd on cross-examination, with reference to the matters shown since he was an expert witness, and the defendants were entitled to ask him any and all questions reasonably necessary and proper to test his temper, bias, motives, interest, intelligence, accuracy or credibility as a witness. Greenleaf on Evidence, page 450; 8 Encyclopedia of Pleading and Practice, page 120; Rogers on Expert Testimony, secs. 33, 35, 37 and 38; 2 Jones on Evidence, sec. 391; Evansich v. Gulf, C. & S. F. Ry., 61 Texas, 24; Wentworth v. Crawford, 11 Texas, 133; Cox v. Missouri, K. & T. Ry. Co., 20 Texas Civ. Apps., 251; Trinity Lumber Co. v. Denham, 88 Texas, 207; Houston, E. & W. T. Ry. v. Wilson, 11 Texas Ct. Rep., 522; Winston v. Cox, 38 Ala., 274; McFadden v. Santa Ana, O. & T. Ry., 25 Pac. Rep., 681; Birmingham Bank v. Bradley, 108 Ala., 207; 2 Encyclopedia of Evidence, pp. 407, 409, 410, 412 and 413; 5 Encyclopedia of Evidence, pp. 629, 630 and 633.

The special charge complained of, and made the basis of appellant's second assignment of error does not in any way affect the matters at issue between plaintiff and the defendant Houston Electric Company, and hence could in no event have been error, as far as the Houston Electric Company is concerned, and can not be the ground for the reversal of the judgment in favor of the Houston Electric Co. Hamilton v. Prescott, 73 Texas, 566; Beer v. Thomas, 13 Texas Civ. App., 36; Mills v. Paul, 30 S. W. Rep., 245; Porter v. Martyn, 32 S. W. Rep., 733; Ramirez v. Smith, 94 Texas, 192; Missouri, K. & T. Ry. v. Enos, 92 Texas, 580; Wilkins v. Ferrell, 10 Texas Civ. App., 235.

If the parties in charge of the H. & T. C. Railway Company's engine believed, and had good reasons to believe, that the street car would be stopped and not approach a place of danger, where a collision might happen between the car and engine, then these parties in charge of the engine would have the right to continue their engine in motion as long as they kept it under perfect control, as the evidence shows they did. Texas & Pac. Ry. v. Roberts, 14 Texas Civ. App., 534; Kennayde v. Pacific Ry., 45 Mo., 261; Newson v.

New York Cen. Ry., 29 N. Y., 390; Davis v. New York, N. H. & H. Ry., 159 Mass., 536.

"It is a general principle of jurisprudence that every person pursuing his lawful affairs in a lawful way, has a right to assume and act upon the presumption that every other person will do the same thing." (Labat on Master and Servant, vol. 1, sec. 354.)

GILL, CHIEF JUSTICE.—This suit was brought to recover damages for personal injuries alleged to have been sustained by plaintiff as a result of the negligence of the Houston & Texas Central Ry. Co. and the Houston Electric Company. On the verdict of a jury in favor of defendants a judgment was rendered and the plaintiff has appealed.

The accident giving rise to this litigation occurred in the following manner: The Houston Electric Company operates a system of electric street cars in the city of Houston and one of its lines crosses at right-angles a system of railway tracks and switches at Bonners point crossing within the city corporate limits. The engines and trains of the railway company have the use of the railway tracks at that point. On the occasion in question one of the Electric Company's cars loaded with passengers, among them the plaintiff, was being propelled over the line which crosses the railway tracks at Bonners point. A rule of the Electric Company requires the conductors of its cars to get off at railroad crossings and flag the cars across, the car to be brought to a full stop just before entering upon the crossing and to proceed upon the signal of the conductor.

In this instance the electric car was slowed down at the crossing, the conductor stepped off and walked across the railway tracks. The car was propelled onto the first track, which seems to have been a switch track, and proceeded slowly into the space between that and the second track. The space between these two tracks was broad.

A switch engine of the railroad company was approaching from the north along the second track at a speed of about 8 miles an hour. The employes in charge of it saw the street car and perceived that it had approached and entered upon the first track. They also saw that the conductor had alighted to flag his car across. The engineer was then within 100 feet of the street car track. The engineer then slowed his engine by the application of the air, but thinking for some reason that the street car would be stopped to allow him to pass he again increased the speed of the engine to eight miles an hour. At practically the same instant the motorman and conductor of the street car, thinking perhaps that the engineer was not intending to cross or that he would give the car the right of way, proceeded to take the car across the track. The speed of the engine carried it within ten to thirty feet of the car. Many of the passengers became very much frightened, thinking a collision inevitable and several of them, including the plaintiff, leaped from the moving car in what they believed was a necessary effort to save themselves. The plaintiff was injured. The engineer stopped his engine by applying the air brakes in emergency. The motorman,

when the passengers began to leap from the car, brought it to a standstill across the track on which the engine was approaching. The engineer had his engine under perfect control and at that speed there was at no time any actual danger of collision. The motorman doubtless stopped the car when he did to lessen the danger of injury to the passengers who were attempting to leave the car. Neither the motorman nor conductor of the car testified, one being dead and the residence of the other being unknown he having left the employ of the company. The motives that actuated these two are arrived at by inference from their conduct and the surrounding circumstances.

The trial court submitted the cause to the jury upon the theory that the evidence presented the issue of negligence on the part of the employes of each company in bringing about a situation of apparent danger which justified the passengers in believing that prudence required them to leap from the car. The case was tried without error as to the electric company and we can not say, as matter of law, that the employes in charge of the car did not act with care in proceeding upon the theory that the engineer, when he first checked the speed of the engine, did not either intend to cross or else to allow the car to cross first.

The most material error assigned affecting the liability of the railway company grows out of the giving of the following special charge presented by its counsel.

"In the light of the undisputed testimony you are instructed that the employes of the Houston & Texas Central Ry. Co., in charge of the engine in question, had the right to assume that the men in charge of the street car in question would use every reasonable effort and care to avoid a collision between said engine and car, and if you find from the evidence that the fireman and the engineer in charge of said engine did believe and had good reason to believe that this car would be stopped and not approach a place of danger, or where a collision might happen between said engine and car, then they, the servants of said defendant, were not negligent in approaching said street car as the evidence shows they did, and if you so find you will return your verdict in favor of the defendant H. & T. C. Ry. Co."

It is generally true that those in charge of a moving train may assume that a person on approaching a crossing either on foot or in a vehicle easily controlled and apparently under control, will either promptly cross at a safe distance ahead of the engine or will await at a safe place the passing of the engine. But this presumption can not be indulged in the presence of conduct calculated to indicate a different purpose, nor where the conduct of those in charge of the engine might be calculated to induce one approaching a crossing to believe the engine would not proceed that far, or that those in charge of it would yield the right of way.

In this case the fact that it was a switch engine proceeding slowly, that generally such engines working in local yards have no fixed destination but move back and forth short distances as necessity requires, and that in this instance it actually slowed

up at a distance of 80 or 100 feet, were all matters for the engineer to take into consideration as affecting his general right to act upon the assumption that others would yield him the right of way.

The operators of the engine testified that they were doubtful what course the motorman would pursue, and their act in first slowing the engine shows that at least at that moment they were uncertain. Their duty to the occupants of the car went beyond the mere avoidance of actual collision. They were bound to exercise ordinary care to refrain from creating such an appearance of imminent danger as would be reasonably calculated to so frighten persons of average temperament as to induce them to adopt dangerous methods to save themselves from apparently greater danger. This principle is not questioned by appellees.

The error is therefore apparent, for the court by the charge in question instructed the jury, in effect, that under the undisputed facts in this case the engineer was justified in assuming that the motorman would not take the car upon the track in front of the engine. The error is not cured by the latter part of the charge in question for the reason that the jury were justified in determining that very issue in the light of the first part of the charge which was manifestly upon the weight of the evidence bearing upon the crucial point in the case in so far as the liability of that company was involved. This error requires a reversal of the judgment in favor of the Railway Company.

An assignment proper to be disposed of in view of another trial complains of the latitude allowed appellees counsel in the cross-examination of Doctor Boyd, called by appellants to testify as to the extent of plaintiff's injuries. In an effort to show interest and bias on the part of the physician he was asked if he had not testified for the plaintiffs in many damage suits brought by the attorneys representing this plaintiff in this cause. The witness admitted that he had so testified in several but could not state how many. Counsel was then permitted to ask him if he had not testified in many cases, naming them, the question also tending to elicit the fact that his fees for attendance on the plaintiffs in the cases mentioned were dependant on recovery of damages.

We think it was proper to permit counsel to show these facts by the witness if he could. If the questions failed to elicit the facts sought to be proved the plaintiff was not injured. If they did, the facts were material. Certainly on cross-examination counsel should have been permitted to ask such questions as, if answered in the affirmative would have shown that the doctor had been habitually called by plaintiffs' attorney, and that his fees for professional services had been contingent on the recovery of a judgment for damages. This fact might be considered by the jury as affecting the value of his opinion in this case. His failure to recall the number of cases in which he had testified authorized counsel to name particular cases. The extent to which such examination should be prolonged was a matter largely in the discretion of the trial court. Of course, it was not proper to inquire into

the correctness of his opinion given in the cases about which he was questioned.

For the error indicated the judgment is reversed and the cause remanded, as to the Railway Company. The judgment in favor of the Electric Company is affirmed.

*Affirmed in part and in part reversed and remanded.*

Writ of error refused.