ST. LOUIS & S. F. RY. CO. v. CLIFFORD.

(Court of Civil Appeals of Texas. Dallas. May 18, 1912. Rehearing Denied June 8, 1912.)

1. WITNESSES (§ 372*)—CROSS-EXAMINATION—DISCRETION OF TRIAL COURT.

Where a physician testifying for a patient suing for a personal injury testified that he did not attend the patient on a percentage of any recovery for the injury, but that the patient was to pay him as any other patient would when he obtained the money to do so, the refusal to permit a question on cross-examination whether his arrangement with the patient was the same as that with a third person was within the discretion of the trial court.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1192–1199; Dec. Dig. § 372.*]

2. NEW TRIAL (§ 104*)—NEWLY DISCOVERED EVIDENCE—SUFFICIENCY.

Denial of new trial on the ground of newly discovered evidence consisting of the testimony of witnesses who could only repeat what they had testified to on the trial, and further state some facts impeaching the testimony of the successful party, was within the discretion of the trial court.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 218–220, 228; Dec. Dig. § 104.*]

3. NEW TRIAL (§ 102*)—NEWLY DISCOVERED EVIDENCE—DILIGENCE.

An affidavit of counsel for defendant in an action for a personal injury in support of a motion for new trial on the ground of newly discovered evidence that he caused investigations to be made that he thought would disclose any facts as to plaintiff's condition, and that it was only after the deposition of a physician had been taken that he learned that the physician had examined plaintiff more than two weeks before the trial, when it was too late to interview him again, and that he did not know until after the trial of any agent of defendant who knew of the fact that plaintiff had been taken off the pay roll of the government because he was able to go back to work, did not show due diligence to obtain the newly discovered evidence before the trial, and a new trial was properly denied.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 207, 210–214; Dec. Dig. § 102.*]

4. DAMAGES (§ 59*) — PERSONAL INJURIES — LOSS OF TIME—PAYMENT OF WAGES.

One sustaining a personal injury resulting in loss of time may recover from the wrongdoer compensation therefor, though his wages continued during the time he was incapacitated.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 108–112, 114, 117, 118; Dec. Dig. § 59.*]

5. DAMAGES (§ 132*) — PERSONAL INJURIES — EXCESSIVE DAMAGES.

A man 27 years old drawing a salary of $1,000 a year as mail clerk sustained a personal injury which confined him to his bed 42 days. His left kidney was enlarged, and his right limb was partially paralyzed. His injuries were permanent, and he would probably grow worse. Prior to the accident he was in excellent health, and was energetic. Held, that a verdict for $8,500 should not be disturbed as excessive, not being manifestly unreasonable.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

Appeal from District Court, Grayson County; B. L. Jones, Judge.

Action by P. V. Clifford against the St. Louis & San Francisco Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Andrews, Ball & Streetman, of Ft. Worth, and Head, Smith, Hare & Head, of Sherman, for appellant. Wolfe, Maxey, Wood & Haven, of Sherman, for appellee.

RASBURY, J. Appellee sued appellant in the district court of Grayson county for damages for personal injuries alleged to have been sustained by him July 14, 1910. Appellee was a mail clerk in the employ of the federal government, and resided in Jackson county, Mo. Appellant is a corporation incorporated under the laws of the state of Missouri, and a common carrier. Appellee claimed that while in the performance of his duties on one of appellant's passenger trains as a passenger between the towns of Troy and Ravia, in the state of Oklahoma, the train was negligently derailed and wrecked, and he was seriously injured. Appellant answered by general denial, and specially pleaded assumed risk and contributory negligence. The cause was tried by jury, and resulted in a verdict and judgment for appellee for $8,500, from which appellant has appealed and the case is here for review.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

[1] Appellant's first assignment of error complains of the exclusion of certain testimony sought to be elicited by appellant. While Dr. R. A. Sullivan, witness for appellee, was on the stand being cross-examined, the following questions were asked and answered: "Q. Do you mean to say that you haven't taken this character of case on percentage of the amount that is gotten? A. I charge for my services rendered just like any other case. Q. Is that true in all cases? A. I might get a percentage out of some. I don't know. Q. Do you know a fellow by the name of Frank Kelly? A. Yes, sir. Q. How long were you treating him? A. Oh, about five or six months; longer than that perhaps. I don't remember how long. Q. Are you charging Mr. Clifford the same as you did Kelly?" To the last question the court sustained objection, and appellant excepted. Appellants expected to prove by the witness that he was charging appellee for medical attention in the same manner that he had charged one Kelly, and to then develop the fact that he had charged Kelly a percentage, and was in like manner to receive a percentage from Clifford, and by such testimony come within the rule announced in Horton v. Railway Co., 46 Tex. Civ. App. 639, 103 S. W. 469, holding such evidence at the discretion of the trial judge admissible to show the interest and bias of the witness. While the trial judge refused to permit the witness to state whether or not he was charging appellee the same as he did Kelly, yet the record shows that he did testify what his arrangement with appellee was. The witness testified that he was not attending appellee on a percentage; that he had no particular arrangement or understanding with appellee about his charges; that appellee was to pay him as any other patient would when he got the money to do so; that he did not know exactly what appellee's bill would be; that $2.50 to $4 and up a visit is reasonable and usual; that he might have gotten a percentage out of some cases; that his charges against appellee were to be the same that they would be against any other patient. The evidence of the witness was full as to whether he was receiving from appellee a percentage of any judgment appellee might recover, and to that extent met the rule in Horton v. Railway Co., supra. The other testimony held to be admissible in that case was that the witness habitually was called to testify in such cases by Horton's counsel. In the instant case that fact was not attempted to be proved. Consequently, since the witness testified what his arrangement with appellee was and because the admission of collateral issues is largely at the discretion of the trial court, we conclude the court did not abuse its discretion, and that the assignment shows no material error. Horton v. Railway, supra; Railway Co. v.

Bailey, 53 Tex. Civ. App. 295, 115 S. W. 601.

[2, 3] Appellant's second assignment of error complains of the overruling of its motion for new trial sought because of newly discovered evidence. The evidence was that of Dr. John G. Lapp, whose testimony by deposition was read in evidence on the trial. The affidavit of Dr. Lapp containing the newly discovered evidence was as follows: "I reside in Kansas City, Mo. My office is in Keith & Perry Building. On January 2, 1911, Paul V. Clifford came to my office for an examination. I made a very thorough examination. Stripped him and examined him very thoroughly and completely. I found absolutely no evidence of an injury or disability of any kind. It was the second time I had examined him. I thought the first time he was only pretending to have an injury and determined to see if I could find any evidence of any injury. I asked him if he did not have a damage suit pending and he said he had not, that it had all been settled. I am positive that he had at that time no injury or disability of any kind." Also certain other newly discovered evidence which was shown by the affidavit of W. B. Webb, of Kansas City, who stated substantially that he was chief clerk in the railway mail service station in Kansas City; that by his direction appellee was examined by different physicians and given certificates of inability to perform his duties from September, 1910, to January, 1911, one of them by Dr. Lapp; that Dr. Lapp in the January, 1911, examination claimed appellee was able to perform his work; that Clifford was not satisfied with the last certificate, and claimed he was not able to work; that witness thereupon gave him a sick lay off for 30 days, expiring February 3, 1911; that appellee drew his salary up to January 4, 1911, but after Dr. Lapp's second certificate, while he allowed appellee to draw his pay, he required him to hire a substitute for 30 days; that at the end of 30 days sick lay off appellee was granted sick lay off without pay; that appellee worked November 30th, December 1st, 2d, and 3d, and then took a lay off, claiming he was unable to do the work. On first examination of appellee Dr. Lapp certified to the government: "My opinion in this case is based on the following character and extent of injuries (to Clifford): There has been an injury to the spinal column, the muscles of the lumbar region, left kidney and left hip." Also "at this time his pulse is rapid, irregular, running 90 to 100; respiration 18, temperature 98 degrees; has a coryza at this time; subjective symptoms, tenderness at places stated, with his injuries complicated with coryza at this time." By deposition Dr. Lapp testified that after furnishing the above certificate he again examined appellee at his office on January 2, 1911, when he made another thorough examination, and that bas-

ed upon both examinations, the one in December and the one on January 2d, he did not believe then and does not believe now that Clifford was seriously or permanently injured. The deposition was taken January 20, 1911, and filed in court just before the trial of the case.

Mr. Silas Hare, attorney for appellant, in reference to the newly discovered testimony, made affidavit stating that he did not know until February 25, 1911, that Dr. Lapp would testify that, when he examined Clifford the second time, he found "absolutely no injury and found that he was able to go back to work"; that he did not know that Clifford had been taken off the pay roll of the government because he was able to go back to work, but declined to do so; that he did not know of any agent of appellant who knew of said facts until January 25, 1911; that he caused investigation to be made that he thought would disclose any facts as to appellee's condition, and that it was only after the deposition of Dr. Lapp had been taken that he learned that Dr. Lapp had examined appellee on January 2, 1911, when it was too late to interview him again.

The tendency of the alleged newly discovered evidence is to prove by Dr. Lapp that there was no evidence on the second examination of appellee of injury or disability of any kind, and that appellee stated to Dr. Lapp that he did not have a damage suit pending. The evidence of Webb tended to prove that acting for the government, and, upon Dr. Lapp's last certificate, he refused to allow appellee to draw his salary any longer without performing his duties. The testimony of Dr. Lapp, it will be seen, is cumulative of what he testified to by deposition, except that portion wherein he says that appellee falsely stated he had no suit pending for personal injury, which, of course, tends to impeach appellee. Webb's testimony could serve no other purpose than to impeach. It cannot be said that the impeaching testimony of either of the witnesses contradicted appellee as to the cause and manner of his injury. By both affidavits statements of appellee were contradicted, and by one, that of Dr. Lapp, statements as to his injury made on the trial were repeated. Because the newly discovered evidence could only result in having Dr. Lapp repeat what he said on the former trial and in having both Dr. Lapp and Webb detail facts that would impeach the testimony of appellee we can only repeat the well-settled rule that appellate courts will not reverse the judgment of the trial court for refusal to grant a new trial because of newly discovered evidence, unless it clearly appears that the trial court has abused its discretion. Railway Co. v. Forsyth, 49 Tex. 171; Railway Co. v. Reagan, 34 S. W. 796; Kidd et ux. v. McCracken et ux., 134 S. W. 839. We also conclude that Mr. Hare's affidavit fails to meet the test of diligence required in such proceedings. Railway Co. v. Blanchard, 73 S. W. 88.

[4] Appellant, by its third assignment of error, complains of that portion of the court's charge wherein appellee is permitted to recover damages for loss of time. The proposition is asserted that the undisputed testimony shows that appellee received his salary from the government from the time of his injury to the time of his trial, and hence lost no time and as a consequence cannot recover therefor. Loss of time, as the result of an injury, is a damage for which the injured person is entitled to be compensated, and, if the injured person is a wage earner and his wages continue during the time he is incapacitated, the defendant is not entitled to the benefit thereof. Railway Co. v. Jarrard, 65 Tex. 560; Railway Co. v. Haddox, 36 Tex. Civ. App. 387, 81 S. W. 1036. The Supreme Court of Georgia, in our opinion, correctly states the rule and the reason therefor in these words: "The wrongdoer may show, in defense to a claim for lost time, that no time has been lost; and this, of course, is right and just, because, if no time has been lost, no compensation is due from anybody on account of lost time. But if time has been lost as the result of a tort, sound sense, common justice, and, it may be, public policy would demand that the tort-feasor be prohibited from making a defense founded upon the proposition that he had been guilty of a wrong, it may be, a grievous and outrageous wrong, but that some third person * * * not in sympathy with the wrongdoer * * * has, from some worthy motive, paid to the injured person an amount which, if it had come from the wrongdoer, would have equaled the damages which would have been assessed against him. Railway Co. v. Miller, 120 Ga. 456, 47 S. E. 960, 67 L. R. A. 87, 1 Ann. Cas. 210. While the authorities are not unanimous on this question, we are persuaded not only that it is now the adopted rule in this state, but the fairest and safest.

[5] The fourth assignment of error is that the verdict of the jury is excessive. The evidence tends to show that appellee was confined to his bed 42 days; that he was examined shortly before the trial and that the specific gravity of his urine was abnormal. The left kidney is enlarged one-half inch or more. His right limb is partially paralyzed, resulting from injury to the nerves in his spine and spinal column. Such condition is permanent and will probably grow worse in the future. The injury to the kidney is also permanent. The tendency of paralysis is to decrease the size of the limb, sometimes to an extent and at times to a great extent. At the time of the injury he was 27 years of age, and weighed 149 pounds, and prior to his injury was in excellent health, and was counted energetic,

and had not lost a day since he had been in the mail service, for which services he was drawing a salary of $1,000 per annum. His time was worth that amount, and he is now unable to perform the work. Under these facts, we cannot agree with appellant that we should disturb the judgment because it is excessive. The rule in such cases is too well settled for us to recite the reasons why appellate courts will not disturb verdicts except when it appears they are manifestly unreasonable. We have carefully examined the testimony, and therefrom conclude that we are not justified in setting aside the verdict on the ground of excessiveness.

Finding no reversible error in the record, the judgment of the trial court is affirmed.