## HUMBLE PIPE LINE CO. v. SPIVEY.
### (No. 741.)

Court of Civil Appeals of Texas. Waco.
Jan. 17, 1929.

Rehearing Denied Feb. 14, 1929.

John C. Townes and R. E. Seagler, both of Houston, for appellant.

Mr. & Mrs. C. S. Bradley and J. E. & B. L. Bradley, all of Groesbeck, and J. E. Gresham, of Mexia, for appellee.

STANFORD, J. This suit was filed by appellee against appellant and the Humble Oil & Refining Company to recover for personal injuries sustained by his wife. Plaintiff, appellee here, alleged, in substance, that defendants negligently placed a piece of hollow pipe, about 2 inches in diameter and about 4½ feet long, in the ground, perpendicularly, on premises which plaintiff was cultivating, so that only about 9 inches of the top portion of said pipe protruded above the surface of the ground, and negligently failed to remove said pipe; that on May 3, 1926, while plain-

tiff's wife was engaged in operating and riding a cotton planter, being drawn by a team of mules being driven by plaintiff's wife, said cotton planter struck said pipe and was caused to suddenly skid to one side and threw plaintiff's wife from the seat of said planter against one of its wheels, and thereby her right leg was thrust into the spokes of said wheel and was broken below the knee, and her right knee was dislocated, etc.

Defendants answered by general demurrer, general denial, and specially denied that they or either of them placed said pipe in the ground on said premises, or that their agents or employees caused the same to be done or had anything to do with the placing of said iron stake in the ground. Defendants also plead fully contributory negligence on the part of plaintiff's wife, and also on the part of plaintiff, which was chargeable to plaintiff's wife, the same as if they were her own acts, knowledge, and negligence. The pleadings were sufficient to raise all issues raised or claimed to be raised by the evidence, so no further reference will be made to the pleadings.

When the evidence was all in, the court instructed the jury to return a verdict in favor of the Humble Oil & Refining Company, and as to the Humble Pipe Line Company the court submitted the case to the jury on special issues, and, on the verdict of the jury so returned, the court entered judgment in favor of the Humble Oil & Refining Company, and in favor of plaintiff against the appellant for $6,000. Appellant, Humble Pipe Line Company, alone has appealed and presents the record here for review.

In response to the court's special issues, the jury found:

(1) That appellant, by and through its agents, servants, and employees, was directly and solely responsible for the presence of the iron pipe in the ground where it was when plaintiff's wife was injured.

(2) That appellant was guilty of negligence in respect to the matters complained of by plaintiff.

(2a) That such negligence of appellant was the proximate cause of the injuries to Mrs. Spivey of which complaint is made.

(3) That neither plaintiff nor his wife, Mrs. Spivey, was guilty of contributory negligence in respect to any of the matters alleged by defendant.

(4) That a reasonably prudent person, situated as the agents, servants, and employees of defendant Humble Pipe Line Company were, at the time of the accident, and possessed of such knowledge and information as they were, relative to the matters involved in this suit, could and would have anticipated or foreseen, as a reasonable and probable consequence of the presence of said iron pipe in the ground, as it was, that some physical injury, such as was received by Mrs.

Spivey, would result to some person engaged in cultivating said land, from the presence of said iron pipe.

(5) That the amount, if paid now, necessary to compensate plaintiff for the injuries and sufferings of Mrs. Spivey, and pecuniary loss of her time and expenses incurred by plaintiff on account of her injuries, is $6,000.

Appellant requested a special charge placing the burden of proof upon appellee, and defining the term "preponderance of the evidence," also a special charge defining "proximate cause," all of which the court gave. Appellant also requested a number of special issues submitting to the jury to find whether or not certain acts, or failure to perform certain acts, by or on the part of appellee or his wife, constituted contributory negligence on the part of either appellee or his wife; all of which the court submitted, and all of which the jury answered, finding that neither plaintiff nor his wife was guilty of contributory negligence.

█ Under practically all of appellant's propositions it contends either that the evidence is insufficient to support the findings of the jury, or that such findings are without evidence to support them. The record discloses that appellee was a tenant farmer on Jake Steubenrauch's farm, and had been on that farm about 13 years at the time his wife was injured. There were 250 acres in said farm. Appellant constructed its several pipe lines across said farm under a written contract with appellee's landlord, of date July 12, 1923, which provided, among other things, that it should have the right at any time to lay an additional line or lines of pipe alongside of the first line, and to change the size of its pipes, and contained the provision that appellant "further agrees to bury and maintain all pipe lines so as not to interfere with the cultivation and drainage of said land." The right of way cleared by appellant for its pipe lines was about 16 feet wide, along which it laid four pipe lines covering a space of some 12 feet; the ditch for each pipe line being some 20 inches wide. Appellee testified, in substance, that the pipe which caused the injury was left there when the Humble Pipe Line Company laid their fourth pipe line; it was a piece of 2-inch pipe, sticking up above the dirt; that it was in the fresh dirt where the ditch had been filled up; that he worked that ground along there prior to the time they put in this big pipe line, and that pipe was not sticking up there before they put in the big pipe line, but that he saw it sticking up there two or three days afterwards; the ditch for the 12-inch pipe line was something like 3½ feet deep; that the protruding pipe was just in the edge of the ditch immediately by the side of the pipe line, and was sticking up above the fresh dirt above the ground about 7 inches. He testified: "There didn't any-

body have any control of that place at that time except myself and the Pipe Line Company through their lease rights."

As above stated, by the lease contract appellant obligated itself to bury and maintain all pipe lines so as not to interfere with the cultivation of the land, and it also obligated itself "to pay any damages which may arise from the laying, maintaining, operating or removing said pipe line." Said instrument also "reserved in the landowners, their heirs or assigns, the right to fully use and enjoy the said premises, except as the same may be necessary for the purposes herein granted."

Appellee testified further: "This was the first cotton planting my wife did for the season of 1926. When I went over there to stop the team, I saw the pipe there. * * * The wheel of the planter that struck the pipe was on the lefthand side. The pipe was not between the row she planted just before the accident occurred and the row she was planting when the accident occurred. I did not know whether or not Mrs. Spivey would plant the row that the stob was on, but I knew that the pipe was along in there somewhere. I didn't tell her that the pipe was there and to be careful, that she might hit it. According to my measurement of it, this pipe is 54½ inches long. There are no indications on this pipe anywhere that show that it had been driven, it don't show to have been driven down there. I do not drive them in the ground sometimes to stake a horse or cow out in the field to graze, because I don't stake horses or cows out. I never had tried to move it out. I didn't move it out because I didn't know what it was put there for, it was on the pipe line and I didn't know what it was put there for. There never has been any operation or drilling or anything of that kind in my portion of the field where the accident occurred. There never has been anything in connection with the oil field through there except this pipe line. They have pipe line walkers who walk that pipe line, and they had men to work along by that stob prior to that time. At first, I think they worked by this stob something like every other day, or every two or three days, something like that. Along later on, after this last pipe line was put there and after I first saw this stob, they still had these walkers along there, and there is one that passes along there now. I couldn't say exactly how often he passed along there about the time this accident happened, but it seems to me like it was every other day or every two or three days, something like that."

Mrs. E. R. Spivey testified, in substance, that on the occasion of her injury she was planting cotton, riding a cotton planter drawn by a team of mules; that her husband was using another planter close to her at the time she was injured, but that he was going one way and she was going the other way; that in using that planter it was necessary for her to look right down next to the ground where the little pipe pours the seed out into the furrow to see if the feeding was regular, and that she was doing this and so could not be looking at the front wheels of the planter, and while thus operating the planter the left wheel struck the iron pipe protruding some 7 inches out of the ground, and caused the planter to be jerked suddenly to one side, and threw her off the planter seat onto one of the wheels, and one foot was caught in the wheel and twisted her over and twisted her knee joint out of place, broke her leg, her clothing was caught on the axle and wound her and her clothing around the axle so she had to be cut loose to get her out; that she did not know the iron pipe was sticking up out there in the field, she had never heard of it being out there; that there were no stumps, rocks, clods, or other such obstructions in that field that might upset a planter or cultivator. Appellee's wife had not worked in that part of said field since the large pipe line had been put through there. Appellant had line walkers whose duty it was to walk its right of way along where this pipe was sticking up 6 to 10 inches, in order to discover such obstructions, and said inspectors did walk said right of way every two or three days.

We have not attempted to set out all the evidence bearing upon the issue here involved, but think the above is sufficient. That the piece of pipe, about 54 inches long, set perpendicularly in the ground, protruded 7 or 8 inches very near appellant's large pipe line is shown by all the evidence. No one except appellee and appellant had any right to be on the land where the pipe was. Appellee testified the offending pipe was not there before appellant laid its large pipe line, and that he saw it there right soon thereafter. We think the finding of the jury to the effect that appellant was solely responsible for the presence of said protruding pipe is amply supported by the evidence. Said 2-inch piece of pipe was placed rigidly in the ground in an upright position, standing some 6 or 7 inches above the ground and close beside the large pipe line last constructed. Appellant had by its right of way contract obligated itself, in effect, to bury and maintain all pipe lines so as not to interfere with the cultivation of said land. Appellant knew it was the purpose and right of the landowner and his assigns, under said contract, to cultivate the land on and over said pipe line right of way, and appellant had no right to maintain protruding pipe or other obstructions that would interfere with the cultivation of said land. Appellant had line walkers, it appears, whose duties were to frequently inspect said line, and the evidence was sufficient to authorize the finding that said inspectors did or ought to have dis-

covered said protruding pipe. We think the evidence was sufficient to authorize the finding that appellant was negligent in leaving said protruding pipe where it was, and we think further, it necessarily follows that such negligence was the proximate cause of the injury to appellee's wife.

Appellant, in an able argument and citation of many authorities, contends that appellee's wife was guilty of contributory negligence as a matter of law, in that she admitted she was not looking in front of the wheels of the cotton planter, and that appellee was guilty of contributory negligence, in that he knew the offending pipe was there and did not remove it or notify his wife of its presence, and that such negligence of appellee was imputable to his wife. The court submitted, at the request of appellant, many special issues embodying alleged acts of negligence on the part of appellee's wife, and also other alleged acts of negligence on the part of appellee. The jury answered all of said issues exonerating both appellee and his wife from contributory negligence in any respect. It is true appellee saw the protruding pipe some time before the injury and knew it was there somewhere, and made no attempt to take it up, but appellee testified it was right by the 12-inch pipe appellant had put in, and he supposed appellant had put it there for a purpose. Doubtless he thought it was connected with the large pipe line, and he was not at liberty to be tampering with said pipe line. It is also true appellee did not tell his wife about said protruding pipe, but this was the first time during the season of 1926 that his wife had worked in that field, and she had been driving the planter only a very short time when she was injured. There were three other planters; four in all being operated in that field at the time of the injury. It was a question of fact for the jury as to whether or not appellee was guilty of contributory negligence in failing to apprise his wife of the presence of said pipe. The finding of the jury that appellee was not guilty of contributory negligence is amply supported by the evidence, and, this being true, it is not necessary for us to decide whether or not, if appellee had been guilty of such negligence, the same would, under the facts of this case, be imputed to his wife. Appellee's wife at the time of the injury was on the seat of the planter, which planter was being drawn by a gentle span of mules. The planter had two wheels. Under the planter and a little back of said wheels was attached a plow which opened the furrow for the cotton seed, and a little back of this plow was a pipe through which the seed dropped into said furrow, and back of said pipe were appliances to cover the seed dropped into said furrow. The land was smooth, clear of stumps, rocks, clods, or other obstructions. Appellee's wife

had no knowledge of the protruding pipe. It was necessary for her to watch the tube or pipe to see if it was properly dropping the seed. Under these circumstances, the finding of the jury that she was not guilty of contributory negligence in failing to watch in front of the wheels of said planter, is fully sustained by the evidence.

All of the matters above discussed involved issues of fact, which were determined by the jury in favor of appellee, and, there being ample evidence to sustain the findings of the jury on each of said issues, such findings are binding upon this court. Cartwright et al. v. Canode, 106 Tex. 502, 171 S. W. 696. We overrule all of the above propositions.

Appellant contends further that the verdict for $6,000 is excessive. Appellee's wife testified, in substance, that her knee was twisted out of place; that her kneecap was torn loose; that her left leg was broken just below the knee, and the knee joint was twisted out of its socket; that she was confined to her bed five weeks on account of said injury, and it was more than three months before she was able to get out of the house, and that she went on crutches for about five months and that at the time of the trial she was not well, was not stout and able to do her work like she could before the injury; that her injured limb at the time of trial pained her so that she could not sleep at night like she did before; that the leaders in her injured limb gave her much pain at night; and that she could not stoop over or bend at all. The injury occurred May 3, 1926, nearly two years prior to the date appellee's wife was testifying. She testified that she had suffered pain from the injury since the date she received same; that since the injury she is nervous and cannot hold out to do anything much; that she was stout and in good health before the injury, able to do and did do all her housework and assisted in the work in the field. Dr. E. F. Hamm testified: That he was called to see appellee's wife right after the injury; that her left knee was dislocated, and there was a break in the large bone below the knee; that he replaced the broken fragments; that of course she suffered greatly; that he treated her six or seven weeks; that, when you have a dislocation of the knee, the ligaments surrounding the knee joint are torn loose, and when those ligaments are once torn loose they are never the same again, and that is the reason for her trouble now. "The condition of her leg now is like I should expect it to continue. There will be some impairment in the knee as long as she lives." The doctor's bill was $50. Appellee testified that at the time of the injury his wife was about 48 years of age and was in reasonably good health; that now her knee is enlarged, her leg crooked, and her

foot out of alignment. The amount of the verdict awarded appellant was a matter peculiarly within the province of the jury in the first instance, and of the trial court on motion for a new trial in the second instance. We cannot say the judgment is excessive. Texas & P. Ry. Co. v. Scruggs, 23 Tex. Civ. App. 712, 58 S. W. 186 (writ refused); Texas & P. Railway Co. v. Laverty, 4 Tex. Civ. App. 74, 22 S. W. 1047 (writ refused). The above proposition is overruled.

▌▌ Appellant contends further that the court erred in refusing to give its specially requested issue No. 37, as follows: "In view of all the facts and circumstances, could a reasonably prudent person have anticipated or foreseen, as a reasonable and probable consequence, that some similar injury to that suffered by Mrs. Spivey might result from the presence of said iron pipe in the ground on said premises?"

The fourth special issue prepared and given by the court was as follows: "Do you find from all of the evidence before you that a reasonably prudent person, situated as the agents, servants and employees of defendant, Humble Pipe Line Company, were at the time of the accident, and possessed of such knowledge and information, as they were, if any, relative to the matters involved in this suit, could and would have anticipated or foreseen as a reasonable and probable consequence of the presence of said iron pipe in the ground, as it was, that some physical injury such as was received by Mrs. Spivey, would or might have resulted to some person engaged in cultivating said land from the presence of said iron pipe?"

As above stated, the jury answered the above issue in the affirmative. Appellant did not attempt to point out any defect in the court's special issue No. 4 supra, and, this being true, it must be taken as correct. Article 2185, Revised Statutes. The only objection to special issue No. 4, given by the court, was that it did not include special issue No. 37, requested by defendant. While special issue No. 4, prepared and given by the court, did not include specially requested issue No. 37 in hæc verba, it did in apt language cover the same matter, was correct, was much more full and complete and more favorable to appellant than its specially requested issue No. 37. There is no merit in this contention of appellant.

▌ Under appellant's thirty-third proposition, it contends the court erred in submitting to the jury special issue No. 2 as to whether the defendant was guilty of negligence in respect to any of the matters complained of by plaintiff, and refusing to divide said question and submit to the jury special issues on each ground of negligence alleged. Special issue No. 2 is as follows: "Do you find from all the evidence before you in this case that the defendant, Humble Pipe Line Company, was guilty of negligence, as that term has been defined to you above, in respect to any of the matters complained of by plaintiff?"

After describing fully how the piece of pipe was placed in the ground, the negligence alleged was: "That in placing said piece of pipe in the ground and leaving same as aforesaid, the defendants, and each of them, their agents, servants and employees engaged in performing services for defendants, and each of them, acted carelessly and negligently," etc. In other words, the negligence alleged was the placing of said pipe in the ground and failing to remove same. It will thus be observed the jury was not by said charge authorized to consider any acts of appellant which they might consider negligent, whether pleaded or not, as was the case in Darden v. Denison (Tex. Civ. App.) 3 S.W.(2d) 137, and other cases cited by appellant, but were expressly limited to the acts of negligence alleged. No error is shown here.

We have considered all of appellant's assignments, and, finding no reversible error, overrule same.

The judgment is affirmed.