**S. H. KRESS & CO. v. DYER et ux.**

No. 1214.

Court of Civil Appeals of Texas. Waco.

May 5, 1932.

Rehearing Denied May 26, 1932.

' C. E. Mason, of Waco, Boyd Porter, Jr., of Fort Worth (on the trial), and Jos. W. Hale and E. B. Burleson, both of Waco (on appeal), for appellant.

J. A. Stanford, Sr., and Tom M. Hamilton, both of Waco, for appellees.

GALLAGHER, C. J.

Appellees, M. S. Dyer and wife, Mrs. Amelia Dyer, instituted this suit to recover of appellant, S. H. Kress & Company, a corporation, damages for personal injuries alleged to have been sustained by Mrs. Dyer as the result of negligence on the part of appellant. Appellant was, on the 23d day of July, 1930, engaged in the mercantile business in the city of Waco and maintained a storehouse situated on Austin avenue, where it sold goods, wares, and merchandise at retail to its customers. Mrs. Dyer, on the date aforesaid, entered appellant's store for the purpose of making certain purchases. While so engaged she slipped and fell upon the floor and sustained personal injuries. Appellees alleged that the floors of appellant's store had been recently covered with some kind of oil or grease; that by reason thereof the same were slick, slippery, and dangerous, and that such condition caused such fall. Appellant specially denied that its floors were slick, slippery, or dangerous, and alleged that, if such condition existed at the time Mrs. Dyer fell, the same was unknown to it and could not have been discovered by it by the exercise of ordinary care. Appellant, by a trial amendment, expressly denied that there was any oil or grease on the floor where Mrs. Dyer fell, and further alleged that, if such substances were on the floor at that time, they were placed there without its authority and by some person or persons to it unknown, and that it could not by the exercise of ordinary care and diligence have discovered the presence thereof on such floor prior to such fall.

The case was submitted on special issues, in response to which the jury found, in substance, that:

(a) Mrs. Dyer, on the date alleged, entered appellant's store for the purpose of making a purchase. The floor thereof was slick and slippery, which condition caused her to fall. Appellant was negligent in permitting its floor to be in such condition, and such negligence was the proximate cause of the injuries suffered by her. She sustained damages as the direct and proximate result of such negligence in the sum of $3,800.

(b) Appellant failed to exercise ordinary care in the maintenance of its floor at that time, and it knew, or could by the exercise of ordinary care have known, that its floor was in such condition.

(c) Mrs. Dyer could not have avoided such fall by the exercise of ordinary care and dili-

gence, and her injuries were neither proximately caused nor contributed to by any failure on her part to exercise such care.

The court rendered judgment on the verdict and findings of the jury in favor of appellees against appellant for the sum of $3,800, with interest from date and costs of suit. Appellant ·presented a motion for new trial, which was heard and overruled.

## Opinion.

Appellant presents assignments of error in which it contends that the court erred in refusing its request for a peremptory instruction, and in which it assails the jury's finding of negligence on its part, on the ground that such finding is without support in the evidence or against the great weight and preponderance thereof. The gist of such contention is that no specific act of negligence on its part was proved, and that the testimony of its employees conclusively refutes any such charge. The testimony introduced by appellee shows that, while Mrs. Dyer was passing from one counter to another in appellant's store, her left foot slipped out from under her and she fell prone upon the floor; that appellant's employees assisted her to arise; that she then looked at the floor and saw a big oil spot where she had fallen. The dress she wore at the time was produced and identified. It showed grease spots on shoulder and skirt. The testimony showed without dispute that appellant made periodical applications of oil to said floor. Appellee introduced testimony that such applications were made once or twice a week; that after such applications it was apparent that the oil had been irregularly applied, more showing at some places than at others. Appellee also introduced testimony showing that said floor at the time of the accident, and for some time prior thereto, was always well oiled, and that as a result thereof it was coated with grease and oil and thereby rendered slick and slippery. The testimony as to the overoiled, slick, and slippery condition of such floor was given by three separate and apparently disinterested witnesses. One of appellees' witnesses was permitted to testify without objection that she herself had slipped and fallen on said floor and had been told by appellant's employees at the time that the oil thereon had been put there by it. Appellant, to rebut said testimony, introduced the testimony of its assistant manager, whose duty it was to supervise the application of oil to said floor. He testified that oil was applied to the floor every two weeks, and that the last application was about ten days prior to Mrs. Dyer's fall; that oil was applied by a mechanical device which distributed it regularly, and that an accumulation of oil at any one place was impossible. He also testified that such applications were made at night and that, before opening the store after the same, a careful inspection of the floor was made, and, if any

"foreign matter" was found, it received an appropriate treatment of feldspar to prevent any possibility of accident. Said testimony was corroborated in substance by appellant's colored porter, whose duty it was to operate the device which applied the oil. Both appellant's assistant manager and its young lady employee who assisted Mrs. Dyer to her feet testified that there was no oil where she fell, or any condition of the floor which could have caused her to slip and fall.

■ Appellant owed Mrs. Dyer, a customer in its store, upon implied invitation to inspect and purchase its wares, the duty to maintain the floor thereof in a reasonably safe condition for walking to and fro thereon. Any dangerous condition of such floor arising from the manner in which it was maintained by appellant or its employees to whom such maintenance was intrusted was a breach by it of such duty. Blake v. Great Atlantic & Pacific Tea Co., 266 Mass. 12, 164 N. E. 486; Judson v. American Ry. Express Co., 242 Mass. 269, 136 N. E. 103; John Gerber Co. v. Smith, 150 Tenn. 255, 263 S. W. 974; Tack v. Ruffo, 263 Mass. 487, 161 N. E. 587; Blease v. Webber, 232 Mass. 165, 122 N. E. 192; Mattox v. Lambright, 31 Ga. App. 441, 120 S. E. 685; Scott v. Kline's, Inc. (Mo. App.) 284 S.. W. 831, and authorities there cited; F. W. Woolworth Co. v. Wood, 32 Ga. App. 575, 124 S. E. 110; Langley v. F. W. Woolworth Co., 47 R. I. 165, 131 A.· 194; Markman v. Fred P. Bell Stores Co., 285 Pa. 378, 132 A. 178, 43 A. L. R. 862. Appellees' testimony hereinbefore stated raised an issue of negligence on the part of appellant in permitting its floor to be slick and slippery as the result of improper oiling by its employees at the time Mrs. Dyer fell thereon and for some time prior thereto. The jury not only found that appellant failed to exercise ordinary care in the maintenance of its floor at the time of her fall, and negligently permitted the same to become slick and slippery, but further found that appellant knew, or by the exercise of ordinary care ought to have known, that it was in such condition. Appellant relies, in support of its contention, on the case of Great Atlantic & Pacific Tea Co. v. Logan (Tex. Civ. App.) 33 S.W.(2d) 470, and the authorities therein cited. In that case the tea company maintained a retail store.· Mrs. Logan, one of its customers, in passing through the same, stepped on a banana peel, slipped, fell, and was injured. There was no testimony in that case that said company or any of its employees were responsible for the presence of the banana peel, at the place where Mrs. Logan stepped upon it, nor that the same lay in that position for such length of time that the company or its employees in the exercise of ordinary care ought to have discovered and removed it. There being no testimony showing that the dangerous condition was created by appellant or its employees, or that they knew

or ought to have known of such condition, the court properly held that negligence on the part of the tea company had not been shown. Appellant, by its trial amendment, pleaded a similar issue in this case and sought to sustain the same by the testimony of certain of its employees, but failed to request that such issue be submitted to the jury for determination. It therefore waived the same. The court did not err in refusing appellant's request for a peremptory instruction, and the jury's finding of negligence on its part in the maintenance of its floor is amply sustained by the evidence.

■■ Appellant presents assignments of error in which it contends that the court erred. in not, at its request, discharging the jury, and entering an order declaring a mistrial because its witness, Dr. Collins, stated in his testimony on cross-examination that he sent a report of the result of his examination of Mrs. Dyer to the Maryland Casualty Company, and in overruling its motion for new trial so far as the same was based on such ground. The clerk's transcript contains no written motion for the discharge of the jury and the entry of an order of mistrial and no order or judgment of the court denying the same. Neither does it contain any bill of exception evidencing such request and refusal and incorporating the same in the record. Appellant's request and the failure of the court to grant the same is shown only in the stenographer's transcript of the evidence, which was filed and approved as the statement of facts in this appeal. Whether appellant's complaint is properly presented for review we will not pause to determine. The statement of facts shows that appellant placed its witness, Dr. Collins, on the stand and proved by him that he had made what he termed an X-ray examination of Mrs. Dyer a short time prior to the trial. Based on said examination, he gave material testimony in rebuttal of appellees' contention that Mrs. Dyer's disability existing at that time resulted from injuries sustained in her fall. Whether such examination was made by the witness at the instance or request of appellees or some other person was not shown. Mr. Hamilton, one of appellees' attorneys, in cross-examining said witness, asked the following questions, to which the witness made replies as indicated:

"Q. Who paid for that report you have got there, Doctor? A. Nobody.

"Q. Who is to pay? A. I hope I am going to get it from — she was referred to me by Dr. Dudgeon, report was made out by me and I think a copy of it was made out to the Maryland Casualty Company."

Mr. Porter, one of appellant's attorneys, who had taken a leading part in conducting its defense, interrupted the examination, and, apparently in the presence and hearing of the jury, addressed the court as follows: "May it please the court, in this connection we had no idea of just what this would lead to, and at this time we would ask the court now for a mistrial of this case. The developments have been such as to render it practically impossible to proceed with the trial of the case and we would like to ask for a mistrial right now." The court thereupon retired the jury, whereupon Mr. Porter further stated to the court that he was directly representing the Maryland Casualty Company and had tried to avoid any reference to it in the trial of the case; that he felt the interests of the defendant had been seriously prejudiced by the statement of the witness, and that a continuance of the trial would be a hardship upon it regardless of any instruction that the court might give to the jury, and that nothing short of a mistrial would serve the ends of justice. A general discussion was then had, in which counsel for appellant intimated or charged that the issue of casualty insurance had been intentionally injected into the case, and Mr. Hamilton denied any such intention or purpose and insisted that the question asked was proper to show the interest or bias of the witness, and that his reply thereto was unexpected and not responsive. The court then announced, in substance, that he would withhold his ruling and would consider the matter further on motion for new trial. Mr. Porter merely said, "We note an exception." The court, in submitting the case to the jury, instructed them not to discuss nor consider whether appellant might or might not carry insurance, nor whether appellees might or might not have to pay any part of the judgment, in event they recovered one, to their attorneys as fees for representing them in the case. Neither party presented any objection to the court's charge. Appellant in its motion for new trial charged that the issue of casualty insurance was deliberately and intentionally injected into the case, and alleged the existence of certain facts which it claimed tended to sustain such charge. Its motion was not verified. Neither is there any testimony showing or tending to show that appellant in fact carried such insurance with the Maryland Casualty Company, or any other company. Appellees filed a reply to appellant's motion for new trial, in which they alleged, in substance, that, if the answer of the witness Collins as before set out indicated that appellant carried such insurance, which was not admitted, such reply was accidentally and unintentionally elicited. Said reply was duly verified by Mr. Hamilton. The court heard said motion and overruled the same. Such action necessarily implied a finding in favor of appellees on the issue of fact so raised.

The right to require an adverse witness to disclose on cross-examination any facts which tend to show interest or bias on his

part is well established and is deemed valuable. His relation to the party in whose favor he is testifying and the circumstances under which he acquired knowledge of the facts related may be material in such an inquiry. We quote on this issue from 28 R. C. L., p. 607, § 197, as follows: "The fullest inquiry must be allowed into collateral matters, whether they have been the subject of direct examination or not. In fact, this line of inquiry is one of the most important purposes of cross examination and is the principal factor in establishing cross examination as one of the chief agencies for the development of the truth in judicial inquiries. By means thereof the relation of the witness to the cause or the parties, his bias or interest, if he has any * * * indeed, any collateral fact which may bear on his truthfulness and impartiality, may be brought to light." See, also, San Angelo Water, Light & Power Co. v. Baugh (Tex. Civ. App.) 270 S. W. 1101, 1104, par. 10, and authorities there cited; Ferguson Seed Farms v. McMillan (Tex. Com. App.) 18 S.W.(2d) 595, 598, par. 7, 63 A. L. R. 1009; Gulf, C. & S. F. Ry. Co. v. Hays, 40 Tex. Civ. App. 162, 89 S. W. 29, 34; Horton v. Houston & T. C. Ry. Co., 46 Tex. Civ. App. 639, 103 S. W. 467, 469; Galveston, H. & S. A. Ry. Co. v. Mallott (Tex. Civ. App.) 6 S.W.(2d) 432, 438, par. 13; 40 Cyc., p. 2663, par. b, and p. 2666, par. c. Whether the examination of Mrs. Dyer about which Dr. Collins testified was made at her instance and request, or at the instance and request of appellant, would materially affect the weight of his testimony concerning the same. Appellees had a right to attempt to show by him that in making such examination he was employed by and acting in behalf of appellant. The transcript of the evidence shows that appellant had theretofore introduced a witness who testified to facts material to its defense; that said witness testified on cross-examination that he lived at Wichita Falls and had come to Waco solely for the purpose of testifying in this case, and that appellant had paid or was expected to pay his expenses on the trip. There is nothing in the record showing or tending to show that appellees or their attorneys knew that the Maryland Casualty Company had actually taken charge of appellant's defense and was conducting the same by and through its own lawyers, nor that it had employed the witness Dr. Collins or any other expert to examine Mrs. Dyer with a view to contradicting her or her witnesses as to her physical condition and the probable cause thereof. The question propounded to said witness and to which he made the answer complained of was therefore apparently a proper one and material to appellees' case. Could the casualty company, by the action aforesaid, deprive appellees of their valuable right to require said witness to make full disclosure of the source

of his employment and the purpose of the examination made by him? Our courts have frequently held that, when the fact that the defendant in a damage suit is protected by casualty insurance is deliberately injected into the record, prejudice will be presumed and such action held to constitute reversible error. The authorities on this subject are collated, reviewed, and distinguished in an able opinion by Chief Justice McClendon of the Austin Court of Civil Appeals in the case of D. & H. Truck Line v. Lavallee, 7 S. W.(2d) 661, 663 et seq., to which reference is here made. The Supreme Court refused a writ of error in that case. We need, however, go no further than the facts of this case require. The identical question here under consideration was involved in the case of Hedger v. Davis, decided by the Court of Appeals of the state of Kentucky and reported in 236 Ky. 432, 33 S.W.(2d) 310, 311, and there decided against appellant's contention. We quote from the opinion in that case as follows: "Thereupon counsel for appellant moved to discharge the jury because of the statement of the witness that he went to see plaintiff at the request of the insurance company, and the motion was overruled. Though we are committed to the rule that it is error to permit testimony to the effect that a defendant in an action for damages is protected by indemnity insurance, and that it is misconduct on the part of counsel for plaintiff, when not acting in good faith, to interrogate prospective jurors or the witnesses in the case for the purpose of bringing such fact to the attention of the jury, Dow Wire Works Co. v. Morgan, 96 S. W. 530, 29 Ky. Law Rep. 854; Owensboro Wagon Co. v. Boling, 107 S. W. 264, 32 Ky. Law Rep. 816; Kentucky Wagon Manufacturing Co. v. Duganics (Ky.) 113 S. W. 128; Duncan Coal Co. v. Thompson's Adm'r. 157 Ky. 304, 162 S. W. 1139; Netter v. Caldwell, 173 Ky. 200, 190 S. W. 721; we have also recognized the rule that the bias of a witness may be developed on cross-examination, and to that end he may be required to show his kinship, business connection, employment, and any other fact or circumstance from which it may be reasonably concluded that his testimony may be favorable to one party or the other. Coral Ridge Clay Products Co. v. Collins, 181 Ky. 818, 205 S. W. 958. Furthermore, when an insurance company carrying the risk sends a physician to examine the injured party, and thus prepares for defense, it is not unreasonable to expect that fact to be developed in the presence of the jury. Here counsel for appellee did not state in the presence of the jury that appellant carried indemnity insurance, nor was there any suggestion to that effect in any question he asked. All that he asked was, 'How did you happen to go down to see him?' Thereupon the witness voluntarily answered, 'At the request of Mr. Page

of the insurance company.' After the witness testified as to what his examination revealed, and his record showed, counsel for appellee was careful not to refer to the insurance company, but asked, 'You then reported to Mr. Page?' The witness said, 'How is that?' Counsel then asked, 'You reported your findings?' The witness answered, 'I filed a copy with the insurance company, yes, sir, and Mr. Page.' As the questions asked went to the bias of the witness, the evidence was admissible, and as the questions were proper in form, we find no basis for the conclusion that counsel for appellee was guilty of misconduct in the matter. It follows that the court did not err in refusing to discharge the jury." We are in accord with the holding of that court as expressed in the excerpt above quoted, and therefore overrule appellant's assignments of error here under consideration.

Appellant presents a group of assignments in which it contends that the damages awarded appellees by the jury are grossly excessive and show conclusively that the jury were influenced by passion and prejudice in making such award. Mrs. Dyer was injured in July, 1930. She was in her fifty-sixth year at the time. Prior to her fall she was in reasonably good health and had since her marriage some twenty years before done all her own housework, cooking, washing, ironing, and scrubbing. She was strong enough when so inclined to mow the lawn and do other hard labor. The immediate effect of her fall was severe pain in the shoulder, leg, and ankle, attended with swelling and marked discoloration. She was in bed practically all the time for three weeks and most of the time thereafter for three months. The trial was had in August, 1931. She at that time still suffered from severe pains in the hand, shoulder, arm, knee, and ankle on the injured side. She was unable to lie on that side at night on account of the pain caused by doing so. Her ankle was frequently swollen, and that leg was then smaller than the other. She at that time was still unable to do her own housework and had to have hired help at times and the active assistance of her husband all the time in performing the usual household tasks. The strength of arm and leg was greatly impaired. She could not lift any substantial weight nor stand or walk for even a short length of time without becoming lame. She was nervous and unable to sleep except under the influence of a sedative. She was corroborated with reference to the matters above recited by her husband and several of her neighbors. She had been continuously under the treatment of her physician ever since her injury. He examined her a day or two after she sustained such injuries. While he found no fractures, he found her seriously bruised on arm, shoulder, and leg. There was an injury to the nerve which supplies the arm and shoulder. About three months after the injury a callous formed in the shoulder, which produced continual pressure on the nerves. He corroborated Mrs. Dyer with reference to the condition at the time of trial of her arm, shoulder, leg and ankle. He testified that such condition would be permanent, and that the same resulted from her fall. Appellant introduced the testimony of two physicians who had examined her shortly before the trial. They testified that in their opinion the condition of Mrs. Dyer's arm, shoulder, leg, and ankle was due to infection, arthritis, and causes other than the fall. The amount of damages to be awarded in a particular case of personal injury is primarily a matter for the jury. It is therefore impossible to reconcile the verdicts in different cases or to measure them by a common standard. The jury in this case seems to have accepted appellees' theory of the case both as to the cause of her injuries and the extent of her suffering and disability therefrom, and we cannot say, in view of the evidence as a whole, that their doing so indicates that they were influenced by any improper motive. The amount awarded is within the range of precedents in similar cases. Texas & P. Ry. Co. v. Perkins (Tex. Civ. App.) 284 S. W. 683, 688, par. 11, and authorities there cited; Humble Pipe Line Co. v. Spivey (Tex. Civ. App.) 13 S.W.(2d) 481, 484, pars. 6 and 7; Ineeda Laundry v. Newton (Tex. Civ. App.) 33 S.W.(2d) 208, 213, par. 15; Texas & P. Ry. Co. v. Thompson (Tex. Civ. App.) 286 S. W. 536, 538, par. 5; El Paso Printing Co. v. Glick (Tex. Civ. App.) 246 S. W. 1076, 1079, par. 9.

We have examined the other assignments of error presented by appellant in its brief and have reached the conclusion that none of them presents reversible error.

The judgment of the trial court is affirmed.