## Hedger v. Davis.

(Decided December 9, 1930.)

ROBERT L. PAGE for appellant.

STANLEY MAYER for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

This is an appeal from a judgment in favor of appellee for $750, of which $450 was for damages to his automobile, and $300 for personal injuries.

There is no complaint of the instructions, and it is conceded that there was sufficient evidence of negligence to take the case to the jury. The only grounds urged for reversal are: (1) The court erred in overruling appellant's motion to set aside the swearing of the jury because of evidence that the doctor made his report to the insurance company; (2) the verdict is excessive.

The record discloses that, after Dr. A. D. Willmoth, chief of staff of St. Anthony's Hospital, had qualified and testified that he examined appellee and found no cuts or bruises on him, and that the X-ray which he made did not reveal anything except a normal spine, the following occurred:

"10. How did you happen to go down to see him? A. At the request of Mr. Page of the Insurance Company.

"11. When did you go down to see him? A. April 11, 1929.

"12. When you went down there what happened? A. At first—

"13. What did you tell him when you went down there? A. I told him I was there to examine him for the insurance company. At first, he was not very kindly disposed to let me talk to him or see him. After acquainting him with the fact that I knew several of the foremen who worked at the United States Foil Company, he then let me examine him and talk to him. And later on, he came up to my office at my request to have an X-ray made of his spine.

"14. Then when you got him into your office, what kind of examination did you put him through? A. X-ray—X-rayed his spine.

"15. What else? Did you examine him in any way besides the X-ray at your office? A. Not that 1 have any record of here—no, sir.

"16. Did you look for any bruises? A. I did the first time 1 saw him—yes, sir; and naturally had him stripped to take an X-ray and I saw him again.

"17. Did he complain of any nervousness? A. He said he was nervous and his back hurt.

"18. Doctor, will an X-ray show any injury to the back? A. It will to the spine, and will to the soft structures if there is any homorrhage in the soft structures. Otherwise, it would not show any injury to the soft structures.

"19. X-ray is not very satisfactory in determining injury to the back, is it doctor? A. Absolutely so, of the bony structures—not of the soft structures.

"20. He may have considerable pain to the back that would not be shown by an X-ray? A. That is very true.

"21. An automobile accident, in which both cars were severely damaged, is that likely to cause nervousness in one of the drivers? A. That is a very hard question to answer. It might in some people; most people, it probably would not.

"22. Depending upon the temperament of the individual? A. Yes, sir. Purely a nervous manifestation, it might be attributed to that, and might be due to something else.

"23. Did Mr. Davis tell you about the nervous condition that this had brought about? A. No, sir; he did not. He said he was off from work two and a half days. My record shows nothing of any nervous condition.

"24. You then reported to Mr. Page? A. How is that?

"25. You reported your findings? A. I filed a copy with the insurance company—yes, sir; and Mr. Page.

"26. By Mr. Page: He told you he was off two and a half days? A. Yes, sir."

Thereupon counsel for appellant moved to discharge the jury because of the statement of the witness that he went to see plaintiff at the request of the insurance company, and the motion was overruled. Though we are

committed to the rule that it is error to permit testimony to the effect that a defendant in an action for damages is protected by indemnity insurance, and that it is misconduct on the part of counsel for plaintiff, when not acting in good faith, to interrogate prospective jurors or the witnesses in the case for the purpose of bringing such fact to the attention of the jury, Dow Wire Works Co. v. Morgan, 96 S. W. 530, 29 Ky. Law Rep. 854; Owensboro Wagon Co. v. Boling, 107 S. W. 264, 32 Ky. Law Rep. 816; Kentucky Wagon Manufacturing Co. v. Duganics (Ky.) 113 S. W. 128; Duncan Coal Co. v. Thompson's Adm'r, 157 Ky. 304, 162 S. W. 1139; Netter v. Caldwell, 173 Ky. 200, 190 S. W. 721; we have also recognized the rule that the bias of a witness may be developed on cross-examination, and to that end he may be required to show his kinship, business connection, employment, and any other fact or circumstance from which it may be reasonably concluded that his testimony may be favorable to one party or the other. Coral Ridge Clay Products Co. v. Collins, 181 Ky. 818, 205 S. W. 958. Furthermore, when an insurance company carrying the risk sends a physician to examine the injured party, and thus prepares for defense, it is not unreasonable to expect that fact to be developed in the presence of the jury. Here counsel for appellee did not state in the presence of the jury that appellant carried indemnity insurance, nor was there any suggestion to that effect in any question he asked. All that he asked was, "How did you happen to go down to see him?" Thereupon the witness voluntarily answered, "At the request of Mr. Page of the insurance company." After the witness testified as to what his examination revealed, and his record showed, counsel for appellee was careful not to refer to the insurance company, but asked, "You then reported to Mr. Page?" The witness said, "How is that?" Counsel then asked, "You reported your findings?" The witness answered, "I filed a copy with the insurance company, yes, sir, and Mr. Page." As the questions asked went to the bias of the witness, the evidence was admissible, and as the questions were proper in form, we find no basis for the conclusion that counsel for appellee was guilty of misconduct in the matter. It follows that the court did not err in refusing to discharge the jury.

In testifying on the question of damages, appellee produced an estimate furnished by the Fidelity Motor

Company showing that it would cost $434.80 to repair the car. He also testified that the reasonable market value of the car before the accident was $650, and after the accident, $150. It is suggested that neither the estimate nor his opinion was of any probative value in view of the fact that the estimate was furnished by a third person, who did not testify, and he did not show himself qualified to testify on the subject. This is not a case where the only evidence as to the extent of the damages was an estimate of what it would cost to make the repairs. Louisville Taxicab & Transfer Co. v. Ramey, 222 Ky. 286, 300 S. W. 890. There was additional evidence as to the reasonable market value of the machine before and after the accident. All the evidence was received without objection, and there being no evidence to the contrary, it cannot be said that the allowance of $450 for damages to the machine was excessive. As to the personal injuries of appellee, Dr. Willmoth testified that he found, and the X-ray revealed, no external evidence of injuries; but he admitted that the X-ray was not satisfactory in determining injuries to the soft structures. On the other hand, appellee testified that his back was sprained, that he received a severe shock, and that he suffered from nervousness which followed the accident and continued up to the time of the trial. On this showing we are not inclined to the view that the allowance of $300 for personal injuries was excessive.

Judgment affirmed.