## Brown McClain Transfer Co. v. Major's Administrator et al.

(Decided Dec. 12, 1933.)

D. H. HUGHES for appellant.
G. P. THOMAS and JOHN T. KING for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The appeal is from a $1,500 judgment recovered for the death of a three year old colored child caused by being struck by appellant's truck. Approaching Canton, Trigg county, from the east, the highway descends a long hill, thence is level for a short distance on a fill four or five feet high, and then goes up a hill through the business section of the village. Along both sides of the embankment there is a guard railing or fence. In the flat about twenty feet from the north side of the embankment is the home of the child's parents. A plank had been laid across the ditch to an opening left in the guard railing for ingress and egress. In the late afternoon of December 21, 1931, appellant's heavy milk truck and trailer came down the hill traveling west. Some of the witnesses testify its speed was rapid. Two automobiles racing each other came from the opposite direction running very fast. They passed the truck perhaps fifty yards east of the child's home. Then the machine of Joe Viers, also going west, passed the truck. It was hugging the north side of the road. Viers testified that, as he approached the house from the other side, he noticed the child near the porch. He always looked close as he came through these guard rails for there were usually a good many children on the road. There were several houses along each side of the highway and on up the hill to the stores so that the place was regarded as a part of the

village. All the evidence is to the effect that one coming from the east down the hill, as was the appellant's truck, as far as three hundred yards from this house, had a clear view of the entire situation.

A few feet below the gap in the guard rail at the child's home and about the middle of the road he was struck by the left fender or the front side of the truck, thrown up on the machine and rolled off, suffering a fractured skull from which he soon died. In an effort to avoid striking the child, the driver suddenly swerved the truck to the right, knocked down about forty feet of the railing, and stopped with its front end in the ditch. A moment before the accident the child had been in the back yard of his home. His mother was busy in the kitchen and told him to go inside to dry his feet. About that time his eleven year old brother and some other little children were coming on the other side of the highway with a Christmas tree. This child went on through the house, out the front door and on the highway, and was crossing to meet the other children when he was struck by the truck.

The driver of the truck, Ausie Lamb, testified that he saw the racing cars approaching, slowed down to not over twenty miles an hour, and got over close to the right edge of the road. After they passed he pulled back into the road and the child ran out in front of him. He was twenty or twenty-five feet away when he first saw the child. He applied the brakes and swerved to the right in an effort to avoid striking him, and testified that the back of the truck slid against the child. Lamb admitted that there was nothing except the passing automobiles to prevent him seeing the child if he had been in the road. However, when the accident occurred, he had passed those machines thirty or thirty-five yards back as he admits. The driver was familiar with the conditions from having traveled the road almost daily and knew that he was passing through a place where children might be expected. After laying the foundation by inquiry and a denial of the witness, the plaintiff introduced a local merchant, who testified that at the scene of the accident Lamb had said that, if it had not been for the racing cars, he might have seen and avoided striking the child, and "I expect I was watching them too close was the reason I ran into the child."

The appellant insists that it was entitled to a direct-

ed verdict because no negligence was proven. We have no doubt that the driver's attention was centered upon the racing cars, but it must not be overlooked that he had a view of the whole situation, that the whole picture was before him, and that any danger from those cars had passed a hundred to one hundred and fifty feet back. There was evidence that he was going faster than the speed stipulated by law as reasonable under the circumstances. Ky. Stats., sec. 2739g-51, subsecs. 2 and 5, and perhaps subsection 8, as enacted by chapter 79, Acts 1930. It is evident that the child had traveled some twenty feet from the porch of its home to the road and nearly halfway across it and a few feet below the gap in the guard rail. There was nothing to prevent the driver seeing him had he been looking there. It is not claimed that the horn was blown or any other warning given. The defendant had the benefit of an instruction as to the sudden appearance of the child and the creation of such an emergency. We are of opinion that there was sufficient evidence of negligence to take the case to the jury and to support the verdict. United Casket Company v. Reeves, 206 Ky. 581, 267 S. W. 1108; Corlew's Adm'r v. Young, 216 Ky. 237, 287 S. W. 706; Fenton Dry Cleaning & Dyeing Company v. Hamilton, 226 Ky. 580, 11 S. W. (2d) 409; Wilder v. Cadle, 227 Ky. 486, 13 S. W. (2d) 497; Gretton v. Duncan, 238 Ky. 554, 38 S. W. (2d) 448.

The court rejected an instruction offered by the defendant to the effect that, if the jury believed the parents of the deceased child, or either of them, failed to exercise ordinary care for the safety and protection of their child, and by reason thereof he was permitted to and did wander upon the highway and but for such lack of care and protection the striking by the truck and the resulting death would not have occurred, then the jury should find for the defendant. The refusal to give this instruction is submitted as prejudicial error. The point opens up the interesting subject of the effect of negligence on the part of a parent contributing to the death of his child where the parents are entitled, under the law, to whatever damages might be recovered.

It may be observed that the courts are in conflict, both as to what may be regarded as negligence of the parent, and as to whether his negligence is to be imputed to the child so as to prevent recovery by or for the bene-

fit of either of the parents for his injury or death. 20 R. C. L., 152, 617; 45 C. J. 1013, 1014; 46 C. J. 1302; Annotations, 15 A. L. R. 414, 23 A. L. R. 700, 69 A. L. R. 482. We have considered the subject in several aspects. In an action for the benefit of a child for personal injuries, we hold that the negligence of his parent is not chargeable to him. South Covington & Cincinnati Street Railway Company v. Herrklotz, 104 Ky. 400, 47 S. W. 265, 20 Ky. Law Rep. 750; Louisville & N. R. Co. v. Wilkins, 143 Ky. 572, 136 S. W. 1023, Ann. Cas. 1912D, 518; Sheetinger v. Dawson, 236 Ky. 571, 33 S. W. (2d) 609. This is in accord with the majority view. Annotations, 15 A. L. R. 414. In cases of the death of a child employed in violation of the State Child Labor Law (section 331a-1 et seq., Statutes), if the parent for whose benefit the action is brought had knowingly suffered and permitted the child to be so employed, that parent cannot maintain an action. But no right of recovery is denied the other parent who had not permitted the employment. Kentucky Utilities Company v. McCarty's Adm'r, 169 Ky. 38, 183 S. W. 237; Id., 170 Ky. 543, 186 S. W. 150; Cincinnati Times Star Company v. Clay's Adm'r, 195 Ky. 465, 243 S. W. 16. Cf. Robinson's Adm'r. v. Robinson, 188 Ky. 49, 220 S. W. 1074.

When it is a matter of contributory negligence on the part of the parents of a child of tender years, we have held it proper, if the facts justify it, to submit the question to the jury, and, if either parent was negligent, recovery is denied to both of them, the suit being for their joint benefit. Louisville & Portland Canal Company v. Murphy, Adm'r, 72 Ky. (9 Bush) 522; Schlenk's Adm'r v. Central Passenger Railway Company, 23 S. W. 589, 15 Ky. Law Rep. 409; Passamaneck's Adm'r v. Louisville Railway Company, 98 Ky. 195, 32 S. W. 620, 17 Ky. Law Rep. 763; Toner's Adm'r v. South Covington & Cincinnati Street Railway Company, 109 Ky. 41, 58 S. W. 439, 22 Ky. Law Rep. 564; Mills' Adm'r v. Cavanaugh, 94 S. W. 651, 29 Ky. Law Rep. 685. But the case at bar does not require a determination of that point, or an expression of affirmation of these opinions in whole or in part, in view of our conclusions in respect to the evidence.

The test of the parents' negligence is always whether under the circumstances of the instant case they or either of them exercised that degree of care which an ordinary prudent person would have exercised under

like circumstances. Such is the enunciation of the law generally. We may look to it particularly.

In Thompson on Negligence, section 32, it is recorded:

"Small children have a right to light, air and exercise, and the children of the poor can not be constantly watched by their parents. From these considerations it follows that the mere fact that a child of tender years has been injured while at large and unattended on a public street or highway, does not necessarily impute contributory negligence to its parents or guardian as matter of law, but is at most only prima facie evidence of negligence on their part, subject to explanation. The question whether they have been negligent in allowing the child to be at large is generally a question for the jury in view of the circumstances attending the particular case. Even in the case of a very young child —in one case only two years of age—if, notwithstanding the exercise of reasonable care on their part, having regard to the situation, the child escapes upon the public street, and is therein injured through the negligence of another, that other must pay for the damages."

It is said in 45 C. J. 1015:

"So likewise, a parent may be free from contributory negligence where the child escapes into a place of danger in the street or highway while temporarily left alone, or while the parent's attention is momentarily diverted from the child."

A number of authorities are cited in support of the text, and the facts of two or three cases having similarity to those before us are related. In addition, we may note more recent ones.

In Hamlin v. N. H. Bragg & Sons, 128 Me. 358, 147 A. 602, 604, it was held that a mother was not negligent as a matter of law by leaving her five year old son unwatched for a brief period while he was playing in a yard bordering on the main street of a town, during which interval the child went out of the yard, crossed a sidewalk and ditch upon a platform, thence a street railway track, and went upon a street where he was struck by an automobile truck. The driver had seen the child on the plat-

form over the ditch, but gave no signal or warning of his approach for fear, as he stated, of startling the child, though, as said by the court:

> "It is not clear why, if he startled him, he expected that he might start to cross the street rather than toward his mother, the source of refuge of every child in case of alarm."

Just as the child started across the road the driver of the truck turned to his left to avoid him and put on the brakes, but struck and injured him.

Another similar recent Maine case is Gravel v. Le-Blanc, 131 Me. 325, 162 A. 789, where a four year old boy was injured by a passing automobile. The child's parents were in comparatively moderate circumstances and lived close to a much-traveled highway. They had two other children, aged eight and five years, respectively, and aside from caring for the children the mother had much to do in the home. After supper the two older children went across the road to a tent where they were accustomed to play. The injured child left the table and unknown to the mother went out the back door and around the house and started across the road to join the other children when he was struck by an automobile. There appeared to have been some evidence that the mother knew the child always played in the street. It was held to be a case for the jury on the question of contributory negligence of the mother.

In Rondeau v. Kay (Mass.) 184 N. E. 926, the injured three year old child was one of four children, the oldest being seven years old. The family lived in a business and tenement district, thickly settled and densely populated. The father was away from home and the mother had to do all the housework and look after the children. She had given permission to the child to play in the yard, around which there was a fence and the gate was hooked. She had seen the child from two to five times before the accident in the house and had told her not to leave the yard. Similar caution had been given before, and the child had never left the yard. On this occasion she did so and was run over by an automobile. The driver was held to be negligent, because, among other things, there was nothing to hide his view from the time the child stood on the curbing

up to the time she was struck while about the· middle of the street. The court held as a matter of law that the child's mother had exercised due care.

We address ourselves to two domestic cases.

In Louisville & Portland Canal Company v. Murphy, Administrator, 9 Bush, 522, supra, a five year old ·child, while attempting to follow an older sister across a privately owned bridge used by the public, fell from the bridge because of a defective guard rail and was drowned. In holding that there was no contributory negligence on the part of the parents, the court said:

> "The child, by reason of its tender years, can not be said to have been guilty of any negligence. She was non sui juris, and her conduct, if negligent, must be regarded as the negligence of the parents, and not that of the infant. · Parents are the legal and natural custodians of their children, and when the children are so young as not to be capable of exercising any discretion their· parents must exercise it for them. This control and care over children must be such as parents of ordinary prudence exercise. (Hartfield v. Roper, 21 Wend. [N. Y.] 615 [34 Am. Dec. 273]; Daley v. Norwich Railroad Company, 26 Conn. 591 [68 Am. Dec. 413]; Mangam v. Brooklyn Railroad Company, 36 Barb. [N. Y. 230] 459.)

> "The evidence in the case shows that the parents had been watchful and vigilant over the movements of their little ones, and the child had escaped from the house without any fault or negligence of theirs, and in no aspect of the case can they be held legally or morally responsible for their sad misfortune."

In Lyttle v. Harlan Town Coal Company, 167 Ky. 345, 180 S. W. 519, where the suit was for the death of a child caused by negligence of an employee of the ·coal company in rolling a heavy rock down a hill to a place where the child was playing, it was held that the parents were· not contributorily negligent in permitting the child to be where he was, although it was not ·unusual for rock to be thrown or rolled there.

We look again to the facts of the case before us.

The father of the child was not at home and the mother was at work in the back part of the house. She had not permitted the child to go in the highway. On the contrary, she had directed him to go in the house and dry his feet. He disobeyed and escaped out the front door into the road without her knowledge. We can perceive no negligence on the part of the parent; hence it was not error to refuse the offered instruction.

Another point made is misconduct of the attorney for the plaintiff in his opening statement to the jury. He said, in substance, that the defendant was a corporation, whereas the defendant is an individual, operating under a firm name. He also stated that the defendant carried insurance to protect himself against any loss occasioned by the operation of the truck on the highway. Upon an objection being made counsel said: "I mean he carried property insurance."

The objection was sustained, and the court admonished the jury that such statements should not be considered; but the plaintiff's motion to discharge the jury was overruled. The statement as to the defendant being a corporation is not material. But it is hard to get away from the thought that that respecting the insurance protection was made deliberately for the purpose of influencing the jury. It has been written a number of times that it is highly improper to inform the jury that the defendant carried indemnifying insurance. Kentucky Wagon Manufacturing Company v. Duganics (Ky.) 113 S. W. 128; Danville Light, Power & Traction Company v. Baldwin, 178 Ky. 184, 198 S. W. 713; Ingram v. Robinson, 199 Ky. 631, 251 S. W. 655; Tri-State Refining Company v. Skaggs, 223 Ky. 731, 4 S. W. (2d) 739; Consolidated Coach Corporation v. Saunders, 229 Ky. 284, 17 S. W. (2d) 233; Chambers v. Hawkins, 233 Ky. 211, 25 S. W. (2d) 363; Hedger v. Davis, 236 Ky. 432, 33 S. W. (2d) 310; Gayheart v. Smith, 240 Ky. 596, 42 S. W. (2d) 877; Trevillian v. Boswell, 241 Ky. 237, 43 S. W. (2d) 715; Breslin v. Blair, 249 Ky. 178, 60 S. W. (2d) 337. It would seem the jury was more obedient to the admonition of the trial court than counsel was to the opinions of this court, for the verdict does not reflect any prejudice or adverse influence. If it did, perhaps it would have been error not to have discharged the jury as requested by

the plaintiff. The ground must be disallowed as not prejudicial.

We find no merit in the criticism of the instruction on the measure of damages because it omitted to say that in fixing the damages the jury should take into consideration the age of the decedent at the time of his death and the probable duration of his life. Such advice was included in the instruction directed to be given in Smith's Adm'x v. Middleton, 112 Ky. 588, 66 S. W. 388, 23 Ky. Law Rep. 2010, 56 L. R. A. 484, 99 Am. St. Rep. 308. The instruction given here, however, is in the exact form of section 230, of Hobson's Instructions to Juries, and many times approved. A note to that section shows it has been held the better practice to omit the directions which were left out of this instruction.

The judgment is affirmed.