## ACRES v. HALL'S ADM'R.

Court of Appeals of Kentucky.
Dec. 12, 1952.

Stoll, Keenon & Park, Lexington, for appellant.

John Y. Brown, Harry Miller, Jr., Lexington, Malcolm Strange, Stanton, for appellee.

SIMS, Justice.

Appellee, Edward Hall, administrator of the estate of his infant daughter, Bonnie Louise Hall, sued Elbert Acres for $35,000 damages for her death alleged to have been caused by the negligence of appellant and for $625 for funeral expenses. The jury returned a verdict against appellant for $2,000 and he asks a reversal of the judgment entered thereon because the court erred in not directing a verdict in his favor at the conclusion of appellee's evidence and at the conclusion of all the evidence. It is apparent that it becomes necessary to give a brief resume of the evidence in deciding whether or not the trial court erred in refusing to direct a verdict in behalf of appellant.

On July 19, 1950, appellee, his wife, Agnes Hall, and their 4 year old daughter, Bonnie Louise, were traveling in appellee's car toward Lexington. There is a bridge 1,800 feet long and 28 feet wide which spans the Kentucky River between Madison and Fayette Counties, known as the Clay's Ferry Bridge. Appellee's car approached the bridge from Madison County and when he was about the center of the structure, he stopped his car on his left side of the bridge with the car angling to the side of the bridge but headed towards Lexington. His purpose in stopping was to look at a boat or boats being operated on the river. Appellee, his wife, and child got out of the car and went to the walkway on the left of the bridge. The father looked at a boat as it went under the bridge and then crossed the bridge to take another look at the boat.

Hall testified he thought his 4 year old daughter got out of the car by herself and that she was with her mother when he

walked across the bridge to look at the boat. He heard the brakes of a car screech, turned around and saw his child under the wheels of appellant's car with its rear wheels "scooting her along". He estimated the speed of the car to be at least 45 miles per hour and it skidded about 50 feet after striking Bonnie Louise. However, he did not measure the skid marks and admits he did not see the car until his daughter was under its wheels. He testified, "I thought she was with her mother. * * * That is where she was when I crossed over to the other side. * * * I left her with her mother."

Mrs. Hall corroborated her husband as to how the accident occurred, but said, "He had the baby in his arms just before that. He went to the other side of the bridge and I stayed on that side, near the front of the car." She saw the car of appellant approaching and testified, "I was just standing there by the car, looking, because I intended to cross the street (meaning bridge) too, but I was waiting for the car to pass, and just as I started, with an eye on the car, I thought Edward had the baby with him and still in his arms, and I said, 'Watch the cars'. Then it passed me, and as soon as it passed me I heard the brakes scream, and when I got out in front of the car the poor little thing was already under his car, and the brakes were still screaming." She was asked this question, "Q. Did you see the child any more after he had her in his arms looking over the side of the bridge? A. No, I did not."

The testimony of appellant and his wife, who was riding on the seat with him, was to the effect that he approached the bridge from the Lexington side at a speed of 35 miles an hour. He saw the car parked on its wrong side near the center of the bridge; a woman was near the front and a man near the rear of this car; the man crossed the bridge and looked over the rail and the woman was on the opposite side of the bridge near the front of the car looking down the river, and appellant saw no one else around the parked car. As he approached the parked car he slowed down to 18 or 20 miles an hour to pull around it. He testified, "As I started to pass the car a child ran out from the back end of the parked car and under the front of my car, and I applied my brakes as quick as I could. The front of my car was about even with the parked car when the child ran out in front of me." Appellant further testified his brakes were in good shape and his car went about 10 feet after striking the child. He did not see the child until he hit her.

Lawrence Richardson was on the Fayette County end of the bridge and testified appellant was driving 40 or 50 miles per hour when he entered the structure and never slackened his speed until the witness heard his brakes scream near the center of the bridge. Richardson did not see the child until she was struck. Mrs. Martha Evinger, who was driving a car which entered the bridge from the Madison County side at the time of the accident, said she could not judge the speed of appellant's car but saw him pull around the parked car in the center of the bridge and testified that just as he did, the child ran from what she thought was the front of the parked car into the path of appellant's car.

Vincent Modica, a Fayette County Patrolman, arrived on the scene right after the accident and testified he saw the blood stains and the skid marks on the bridge and the latter were about "3 paces or 9 feet long". He made no notes of the distance of the skid marks. He was corroborated by James Bevins, another county patrolman. A Mrs. Kinkead testified that Officer Modica stated on the examining trial of appellant that the skid marks were 13 steps, or about 39 feet.

■ Appellant insists there was no evidence of negligence on his part and for this reason he was entitled to a directed verdict. With this we cannot agree. He saw a car parked on the bridge which had "no parking" signs at each end. He could see this car plainly 900 feet in front of him parked on its wrong side and in the path of his vehicle. Furthermore, he saw a woman near the front and a man near-

the rear of this parked car and the man crossed the bridge while the woman remained near the parked car. Appellant admitted he had to turn out to pass this car as it was in his line of travel; that when he did this, he reduced his speed to 18 or 20 miles an hour. However, the witness Richardson testifying for appellee stated appellant entered the bridge at 40 or 50 miles per hour and never slackened his speed until the moment of the accident. Hall gave appellant's speed at 45 miles per hour. Certainly, the circumstances were such that a jury might conclude appellant was driving too fast as he passed the parked car or that he should have given notice of his approach by sounding his horn. Best's Adm'r v. Adams, 234 Ky. 702, 28 S.W.2d 484; Lever Bros. Co. v. Stapleton, 313 Ky. 837, 233 S.W.2d 1002; Nickell v. Stewart, 291 Ky. 4, 163 S.W.2d 39.

In support of his argument that there was no evidence of negligence on his part appellant relies upon such cases as Louisville Taxi & Transfer Co. v. Warren, 305 Ky. 861, 205 S.W.2d 695; Schultz v. Smith's Adm'r, 314 Ky. 198, 234 S.W.2d 676; Knecht v. Buckshorn, 233 Ky. 329, 25 S.W.2d 727; Hatfield v. Sargent's Adm'x, 306 Ky. 782, 209 S.W.2d 306; Burton v. Spurlock's Adm'r, 294 Ky. 336, 171 S.W.2d 1012; Saddler v. Parham, Ky. 249 S.W.2d 945. These cases may be distinguished from the instant one on their facts. In the Warren as well as in the Schultz case a person stepped into the path of the approaching vehicle when there was nothing to put the driver on notice that such a thing might happen. In the Hatfield case an adult walked into the side of an approaching car when the driver had no notice that he might do so. In the Knecht case a boy without warning ran from the sidewalk into the front fender of a car being operated without negligence and when the driver was without notice that the boy might do so. In the Burton case it was held that the evidence sustained a verdict for defendant where a 6 year old girl ran from behind a bus in front of a cab. The facts in the Saddler case are not similar to those in the instant one.

We find merit in appellant's contention that the parents of the child were guilty of contributory negligence as a matter of law and on this ground the court should have directed a verdict for appellant. A leading case on the subject is Brown McClain Transfer Co. v. Major's Adm'r, 251 Ky. 741, 65 S.W.2d 992, which was followed in Wheat's Adm'r v. Gray, 309 Ky. 593, 218 S.W.2d 400, 7 A.L.R. 2d 1336. In the instant case the parents and their 4 year old daughter alighted from their car parked on the wrong side of a bridge upon which "no parking" signs were posted. The bridge was 1,800 feet long and 28 feet wide. The parents were bound to have realized the danger in the situation, yet neither paid sufficient attention to the little girl to know where she was. The mother thought the child was with the father, while he thought she was with her mother. While we do not want to appear to deal harshly and without feeling for this unfortunate couple, they seem to have been more intent on watching the boats and the river than in the safety of Bonnie Louise. How easy it would have been for each of them to check with the other to ascertain their child's whereabouts. In fact, we fail to understand why either parent did not know the child was not with the other since they were only separated by the width of the bridge and were practically in sight of each other. They appear to have been oblivious to their obligation to protect their 4 year old daughter in a dangerous situation which they had created.

The rule is that contributory negligence is a complete defense. It is not necessary that such negligence be the proximate cause of the injury. It is sufficient if it contributes thereto so that but for same the accident would not have happened. While usually a question for the jury, we have written that where there is no dispute as to the facts and but one conclusion can be drawn from the uncontradicted testimony by fair-minded men, the question of whether or not one is

guilty of contributory negligence becomes a matter of law for the court. Norfolk & W. Ry. Co. v. Bailey, 307 Ky. 386, 211 S.W.2d 154, and authorities therein cited; Louisville & N. R. Co. v. Hyde, Ky., 239 S.W.2d 936. It is apparent to us that no fair-minded person can doubt these parents were negligent in not caring for their little daughter and their negligence so contributed to the accident that but for same it would not have happened.

As the suit was brought for the joint benefit of the parents, their contributory negligence prevents them from recovering. Brown McClain Transfer Co. v. Major's Adm'r, 251 Ky. 741, 65 S.W.2d 992; Wheat's Adm'r v. Gray, 309 Ky. 593, 218 S.W.2d 400, 7 A.L.R.2d 1336.

If the evidence is the same upon another trial, the court at the conclusion of all the evidence will direct a verdict for defendant. The judgment is reversed.