## UNITED FUEL GAS CO. et al.

### v.

### FRIEND'S ADM'X.

Court of Appeals of Kentucky.

May 21, 1954.

Rehearing Denied Oct. 1, 1954.

 

J. Woodford Howard and Fred G. Francis, Prestonsburg, for appellants.

A. J. May and Paul E. Hayes, Prestonsburg, for appellee.

STEWART, Justice.

This appeal is from a judgment of the Floyd Circuit Court awarding $25,000 to plaintiff, Violet Perry Friend, mother and administratrix of the estate of Robert Perry Friend, a seven-year-old boy who was struck and killed by a one-half ton truck owned by the United Fuel Gas Company and operated by its servant, Milton Martin, both defendants. We shall refer herein to the parties as plaintiff and defendants.

The petition averred the boy's death was caused by the negligence of defendants. The joint answer was a denial of this allegation and a plea of contributory negligence upon the part of the child in that he carelessly and suddenly appeared in front of and so near the truck that the accident was unavoidable upon the part of the driver of the truck. By an amended answer defendants alleged that plaintiff, who would be the sole beneficiary of any recovery that might be had, should be adjudged entitled to nothing because she was herself guilty of contributory negligence. A reply in the form of a traverse completed the issues.

Defendants urge as grounds for reversal that they should have been given a directed verdict at the close of all the evidence and, if this contention be rejected, that the court erred in giving "Instruction No. 2" on "last clear chance" over their objection and exception. The first ground is based upon the argument (a) that there was no proof of negligence upon the part of the truck driver and (b) that plaintiff was herself guilty of contributory negligence as a matter of law.

The deceased, together with his mother and his eight-year-old brother, Tommy Friend, lived in an apartment over a business establishment known as the Big Sandy Tobacco & Candy Company. The family was one of limited finances. An outside

stairway on the south side affords the apartment access to the ground. This building is located just north of the city of Prestonsburg on the west side of U. S. Highway No. 23, sometimes called the Mayo Trail and North Lake Drive, which runs in a north-south direction through this city. The scene of the accident was on the highway in front of plaintiff's apartment and between Branham Street to the south and Patton Street to the north. These two streets are parallel to each other and cross the highway at right angles in an east-west direction. There is a traffic light at the intersection of the highway with Branham Street, and it is 328 feet distant from this street to a point opposite the south front corner of plaintiff's apartment. From the north front corner of the apartment to Patton Street is approximately 125 feet.

There are four buildings on the west and three on the east side of the highway in the block between Branham and Patton Streets. The evidence established that visibility from the above traffic light to the foot of the outside stairway leading down to the ground from the apartment where the child lived was unobstructed. No sidewalk is on the west side of the highway between the two streets; however, there is a sidewalk on the east side, beginning directly across from the outside stairway of the apartment building and this extends southwardly toward Branham Street and thence to the city.

It is not disputed that at the time of the mishap at least two trucks were parked one behind the other on a concrete platform in front of and parallel to the Big Sandy Tobacco & Candy Company building, with the cab or front of one truck situated near the south front corner of the establishment and also close to the spot where the outside stairway begins its ascent.

At about 8:00 a. m. on the day of the accident, Tommy Friend and his deceased brother, Robert, left their home for school. Plaintiff, who had been living at the above location only three weeks, testified that the two boys usually crossed the highway to the sidewalk opposite their home, a distance of 58 feet from the foot of the stairway, and then proceeded on to school. She had accompanied them over this crossing, to employ her words, "only the first two or three days that I lived down there." She explained that it was customary for her to put the older boy in charge of his brother when the two were out on the street unaccompanied by her. It is uncontradicted that Tommy Friend had descended the stairway and had walked alone to the sidewalk across the street. A few seconds later the younger boy attempted to join him and was hit by the truck as he undertook to traverse the highway. Plaintiff did not see the collision but she heard the screeching noise the truck brakes made. She stated she had been looking from a front window immediately before the child was struck, and she denied that Robert could have dashed onto the road from behind one of the trucks parked in front of her apartment, which defendants contend the boy did. On this score, she maintained that, although she did not see him go in front of the truck, she nevertheless had a full view of the rear of the truck and could have observed him if he had passed there.

Tommy Friend testified that he descended the stairway ahead of his brother, walked in front of the two parked trucks and over the road to the sidewalk. He noticed the truck that subsequently struck Robert pulling out from the traffic light at Branham Street and he also saw a car coming toward him from the opposite direction "a long ways down the road." He did not watch his brother walk from the foot of the stairway to the highway but, as soon as he saw the younger boy descending the stairway, he turned his back and started up the sidewalk. Upon hearing the screaming of the truck brakes, he wheeled around and saw Robert beneath the right front wheel of the vehicle on the side of the road near the sidewalk.

Herbert Patton, a witness for plaintiff who at the time operated a filling station about 200 feet north of the scene of the collision and on the right-hand side of the highway going south toward Prestonsburg, testified that he saw the deceased as he

started to cross the highway. Patton surmised the child saw the truck just as he reached the middle of the pavement, for, according to him, the boy hesitated momentarily, then turned as if to go back, and finally reversed his direction and made a last-minute effort to dash across the road ahead of the truck, whereupon he was hit. Patton said no traffic was going south toward Prestonsburg at the time and added if there had been a car traveling toward the city when the accident happened he could not have observed the child moving across the street in the manner indicated. He stated that the truck did not come to a halt until it had reached his filling station. Patton also noticed three or four children standing on the east or on the truck operator's side of the highway in plain view just before the collision. He estimated the truck was traveling from 20 to 30 miles per hour.

Defendants' version of the accident, as developed by the testimony of Milton Martin, the truck driver, Jesse Wallen, his companion in the truck, and certain other eye-witnesses who were introduced in their behalf, is that the deceased first went behind one of the vehicles parked in front of the Big Sandy Tobacco & Candy Company building and, when he emerged and advanced toward the road, he was concealed from view by a black automobile approaching the truck on the highway from the opposite direction. As a result, defendants claim the boy appeared so suddenly in front of and so near the truck that the operator could not avoid the collision.

Martin stated he was not more than 8 to 15 feet from the child when he first saw him. He testified he was looking straight ahead before the impact, he saw no one standing on his right and he did not "hit the brakes hard" after the collision, because he was afraid he would drag the boy. He said he stopped within 40 or 50 feet of the place where the impact occurred. Jesse Wallen, who was seated in the cab beside Martin, and James Campbell, who at the time was walking on the south side of the highway just below Patton Street, described the accident in much the same manner as Martin. Wallen noticed a boy on the right side of the road, he said, but he did not see the deceased until the latter appeared in the path of the truck. Campbell saw the truck strike the deceased, saying: "It looked like it happened all at once." He also testified that a black sedan passed the scene of the accident going south just before the collision. Miles Gibson, Jr., another witness for defendants who was trailing in his car from 60 to 100 feet behind the truck driven by Martin, did not see the accident, and his testimony is silent as to whether a car was coming south toward the truck at the time. The truck, according to these witnesses, was traveling between 25 and 30 miles per hour.

 There is no doubt in our minds, after evaluating the proof in this case, that it was proper to submit the questions of negligence and contributory negligence to the jury for determination. Considering the evidence adduced for plaintiff in its most favorable light, and this they were privileged to do, the jury had the right to infer and believe that Martin failed in his duty to keep a proper lookout ahead. In addition, from the testimony of Patton that the truck did not stop after the accident until it had traveled almost 200 feet, the jury might reasonably conclude Martin did not have his vehicle under control. Martin testified he was looking at the pavement "straight in front" and saw no one on either side of the highway. Had he likewise been looking on each side, he might well have noticed the children other witnesses stated they saw standing along his right side of the highway and this fact would have placed a burden on him to exercise the most careful observation under the circumstances, because of the propensity of young children to suddenly dart or run into the street or road from the edge or side. See Lehman v. Patterson, 298 Ky. 360, 182 S.W.2d 897. We conclude the evidence was amply sufficient to support the judgment.

 In this jurisdiction a child under seven years of age is not chargeable with contributory negligence in any event and children between the ages of seven and

fourteen are presumed incapable of contributory negligence, but the presumption may be rebutted by counter testimony. See Sutton Construction Co. v. Lemaster's Adm'r, 223 Ky. 296, 3 S.W.2d 613; Louisville & N. Railroad Co. v. Hutton, 220 Ky. 277, 295 S.W. 175, 53 A.L.R. 1328. Defendants failed in the case at bar to introduce any evidence to overcome this presumption. It follows that the deceased, by reason of his tender years and because of the absence of evidence to rebut the legal presumption of his immaturity and want of understanding, could not be guilty of contributory negligence, and his conduct, if negligent, must be regarded as the negligence of his parent, the plaintiff. Brown McClain Transfer Co. v. Major's Adm'r, 251 Ky. 741, 65 S.W.2d 992. We should state at this juncture that the court gave an instruction on contributory negligence as to the boy and also submitted the question of sudden appearance to the jury. For the foregoing reasons the first-mentioned instruction should not have been given. See Dixon v. Stringer, 277 Ky. 347, 126 S.W. 2d 448, for a comprehensive treatment of this point.

Was appellee guilty of contributory negligence as a matter of law by reason of her failure to exercise that degree of care and control over her child the conditions made necessary? It is argued with much force that she was neglectful of her duty in this respect when she permitted the deceased to cross, as was contended, a heavily traveled highway unattended and at a place in the middle of the block.

■ The test of the parents' negligence in every case like the one under consideration is always whether they, or either of them, exercised that degree of care which an ordinarily prudent person would have exercised under like circumstances. In the case of Brown McClain Transfer Co. v. Major's Adm'r [251 Ky. 741, 65 S.W.2d 994], cited above, a child three years of age was fatally injured when it strayed alone out into a public road in front of its home and was struck by an automobile,

and upon the subject of the parents' negligence in such a case, the opinion, quoting from Thompson on Negligence, had this to say on the proposition under consideration: " 'Small children have a right to light, air and exercise, and the children of the poor can not be constantly watched by their parents. From these considerations it follows that the mere fact that a child of tender years has been injured while at large and unattended on a public street or highway, does not necessarily impute contributory negligence to its parents or guardian as matter of law, but is at most only prima facie evidence of negligence on their part, subject to explanation. The question whether they have been negligent in allowing the child to be at large is generally a question for the jury in view of the circumstances attending the particular case.' "

The practice of sending school children of tender age to their places of learning unattended or in company with older children is generally followed, not only in Prestonsburg but elsewhere, and, applying the principle of law just stated to the facts of this case, we do not believe this practice, resorted to by plaintiff in this instance, in itself amounts to contributory negligence as a matter of law upon her part.

■ Nor do we accept the view that plaintiff was chargeable with this same type of negligence because she allowed her children to cross the highway where they would naturally do so. It is undisputed that no sidewalk existed on the west side of the highway up to Branham Street. But, on the opposite side, as has been pointed out, a sidewalk extends from the Branham Street intersection and ends directly opposite the outside stairway leading to the upstairs apartment where the deceased lived. This was the logical place for plaintiff to instruct her sons to cross over. Had they proceeded along the west edge of the highway to Branham Street, as defendants insist they should have done, they would have done so with their backs to on-coming traffic, and this would have been in direct violation of KRS 189.570(6).

In view of the facts set out, we conclude it was for the jury to say whether plaintiff was guilty of contributory negligence.

■ It is next argued plaintiff was not entitled to have her case submitted to the jury under the doctrine of last clear chance. We do not agree. Evidence adduced by plaintiff, particularly maps and photographs introduced by both parties, show that Martin was in a position, some 328 feet from the point of impact, to have clearly seen the deceased as he left the bottom of the stairway. The child was in plain view a sufficient length of time to put Martin on notice he might move into the pathway of the truck and a duty was placed on the operator to proceed alertly and cautiously. More than that, Patton testified the child was visible from the moment he left the building until he was struck. Since defendants' contention, based upon their pleadings and evidence, is to the effect that plaintiff negligently sent or permitted the deceased to go upon the highway and place himself in a position of danger, but for which negligence upon her part the deceased would not have been injured, an instruction on plaintiff's contributory negligence was warranted. But, from the evidence heretofore recited, a last clear chance instruction was authorized because it would not have been unreasonable for the jury to have believed Martin by the exercise of ordinary care should have had sufficient time after discovering the peril of the deceased to have avoided the accident. See Kentucky-Virginia Stages v. Tackett, Adm'r, 298 Ky. 78, 182 S.W.2d 226; Dixon v. Stringer, supra.

■ Nor can it be argued that the doctrine of last clear chance is not applicable to plaintiff, because she is not the party actually injured, for the better rule appears to be that the doctrine applies where the facts permit, whether the plaintiff be the injured party himself, or one who is legally responsible for the injured person's behavior. See 65 C.J.S., Negligence, § 136, p. 756; 38 Am.Jur., Negligence, sec. 216, p. 902.

■ However, Instruction No. 2 on last clear chance, as submitted, was fatally defective in that it was qualified by a contributory negligence instruction as to the boy, a contributory negligence instruction as to the mother, and a sudden appearance instruction as to the boy. We have previously stated that under the evidence adduced, the contributory negligence instruction as to the boy should not have been given. Since sudden appearance presupposes an unavoidable accident, it was inconsistent for the trial court to qualify its last clear chance instruction by stating in substance to the jury, "Even though you find Martin could not have avoided the accident for the reason that the boy suddenly appeared in front of and so near the truck, you may find for plaintiff if you find Martin had the last clear chance." The jury was thereby instructed to find against defendants although they could not have avoided the accident. This was an unjustifiable cancellation of the defense of sudden appearance. It is thus apparent the instruction was prejudicial to the substantial rights of defendants.

If the facts are substantially the same on a second trial, the jury should be told relative to the instructions we have commented upon in effect as follows: If they believe the deceased suddenly appeared before the truck, they should find for defendants; if they believe otherwise, they should find for plaintiff, unless they should believe plaintiff was contributorily negligent in permitting the deceased to go on the highway under the circumstances; and, finally, if the jury should find that the deceased did not suddenly appear before the truck, but that plaintiff was guilty of contributory negligence, they should find for defendants, unless they should further believe the driver of the truck, by the exercise of ordinary care, saw or should have seen the deceased in a position of peril and thereby have avoided the accident.

Wherefore, the judgment is reversed and set aside and the case is remanded for further proceedings consistent with this opinion.